ASENATH S. BROWN *vs.* E. G. MURDOCK.

Hampden.    Sept. 22. — Nov. 7, 1885.    FIELD, C. ALLEN, & GARDNER, JJ., absent.

A member of the board of health of a town has no authority, against the consent of the owner or occupant, to take possession of a dwelling-house in which a contagious disease exists, and of the furniture therein, to the exclusion of such owner or occupant, and to carry away and destroy portions of the furniture, or to station a person on the premises with instructions to prevent ingress to and egress from the same, except in the manner pointed out in the Pub. Sts. c. 80.

In an action against a member of the board of health of a town, who unlawfully took possession of the furniture in a house in which a contagious disease existed, and destroyed it, the defendant asked the judge to rule that the measure of damages was the market value of the property in its infected condition. The judge refused so to rule, and instructed the jury that the plaintiff was entitled to recover what the property was worth at the time it was taken, taking into consideration how much the value had been affected by its exposure to infection. *Held*, that the defendant had no ground of exception.

TORT for breaking and entering the plaintiff's close in Palmer, namely, a boarding-house, and taking possession of certain personal property, and converting the same to the defendant's use. The answer alleged that a contagious disease, dangerous to the public health, known as small-pox, existed in the plaintiff's house; that a portion of said property was infected with

said disease; that the defendant was a member of the board of selectmen and board of health in Palmer; and that whatever was done by him was done for the purpose of preventing the spread of said disease, and for the safety of the inhabitants residing in the vicinity of the plaintiff's house. Trial in the Superior Court before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

It was agreed that small-pox existed in said boarding-house, as alleged, the evidence showing that it was of a dangerous type; and that the defendant was a member of the board of selectmen, and *ex officio* a member of the board of health. The boarding-house was the property of the Thorndike Company, a manufacturing corporation having two large mills in that part of Palmer called Thorndike, and was at the time of the defendant's acts, and for some two years previously had been, kept by the plaintiff. It contained thirty-five rooms, and, at the time the existence of small-pox was first announced, was occupied by about forty-one boarders, the plaintiff, and two hired girls.

The plaintiff testified, that on Tuesday night, about April 20, 1882, a disease from which she and three boarders had been suffering for some days was pronounced to be small-pox by the attending physician; that she was thereupon isolated from other portions of the boarding-house, and was, during the progress of the disease, kept in a portion of the boarding-house, apart from the other inmates, some four weeks; and that she found, upon her recovery, that all her boarders, excepting some two or three, who then remained sick with the same disease, had been removed, and that the personal property named in the declaration was either gone or injured.

There was evidence, that, on or near the Tuesday above named, the defendant nailed red flags on the back and front doors of the boarding-house; that one Nathan K. Story, who, with his family, resided in a tenement in the boarding-house building, and at this time was an employee of the Thorndike Company, and was a town constable, was stationed at or near the boarding-house, with instructions, as testified to by him, to prevent persons going in or coming out to expose others, and to use his own judgment to prevent the spread of the disease, but he had no warrant under the Pub. Sts. *c.* 80; that he continued in this service until

the following Saturday, when a large number of the inmates of the boarding-house, with their personal effects, and a quantity of the furniture and other household effects, were removed from the boarding-house to another house provided by the defendant for that purpose; and that thereafter, until shortly before the recovery of the plaintiff, as stated, Story divided his time between the boarding-house and the house so provided, in a general oversight of both the houses.

It further appeared in evidence, that during the sickness of the plaintiff, at different periods, a quantity of the personal property in the boarding-house, consisting of the bedding and furniture, principally from the rooms of the sick, and some wearing apparel, were destroyed, as being infected and dangerous. The plaintiff offered evidence tending to show that at least a portion of these articles were destroyed by the personal direction of the defendant; that most or all of the remainder were destroyed by the direction of Story; that the articles removed from the boarding-house to the house provided by the defendant, as above stated, were removed by the defendant's directions; that Story was stationed at the boarding-house, as above stated, by the direction of the defendant; and that, in all Story did, he was so far the agent of the defendant as to render the defendant responsible for his acts.

The defendant denied that Story received any authority whatever from him; and offered evidence tending to prove that Story was stationed at the boarding-house by one Cornelius Wilson, then the local agent of the Thorndike Company, but since deceased, and that the defendant gave him no instructions. The defendant also denied that he had anything to do with the removal of the goods from the boarding-house to the house provided by him, and testified that Wilson agreed with him to furnish such house if he would provide it, and alone caused said goods to be removed thereto; that he gave no authority to any one to destroy any of the property in the boarding-house; and that, if any such goods were destroyed, the same was without his knowledge. The evidence tended to show that some of the supplies were consumed in the boarding-house, and others spoiled by keeping during the plaintiff's sickness. There was no evidence that the defendant had anything to do directly

with any of the plaintiff's said property, other than what was done by persons claimed by the plaintiff to have been employed by the defendant, further than to nail up the flags as above stated, and, as testified to by one of the plaintiff's witnesses, visit the boarding-house frequently, and inquire how the sick were getting along; and it was not contended on the part of the plaintiff that whatever he did was not attempted to be done by him in his official capacity alone. There was no evidence that any person was actually prevented at any time from entering the boarding-house, or that any person desired so to enter, excepting that one Charles R. Shaw, the plaintiff's son, applied to Story for admission on the Wednesday following the Tuesday above named, and was refused, Shaw testifying that his purpose in going to the boarding-house was to remove the provisions therefrom; and he further testified that, on being informed of the existence of the disease, he did not want to enter. The plaintiff contended, upon the evidence, that no person was permitted to leave the boarding-house excepting under the direction of the defendant or his agent. The plaintiff offered evidence tending to show that the defendant, or those claiming to be his agents, took possession of the house and property, removed patients from room to room therein, employed doctors, who went there from time to time, and directed what should be done, fumigated and disinfected the house and materials, destroyed or removed portions of the furniture, and wrought much injury. There was no other evidence that any of the plaintiff's property was used or disposed of, and there was no other evidence of any forcible entry other than such as resulted from the foregoing facts.

On the question of damages, the plaintiff offered no evidence other than her own testimony that the property mentioned in the declaration, all of which she claimed was lost or injured, as therein alleged, cost, when new, the prices annexed to each item, excepting in a few instances, where the sum so annexed showed only the damages sustained, and that they had been in use in this and other boarding-houses from about one to three years, and some as long as four. The defendant offered evidence, that, for the purposes of sale, such property used in a boarding-house in the manner testified to by the plaintiff would depreciate from forty to fifty per cent on the cost; and that infected

beds and bedding were of no value. The plaintiff contended that the stationing of Story at the boarding-house on the Tuesday above named, with the instructions as above stated, and the defendant's and his agents' acts in pursuance thereof, amounted to dispossessing the plaintiff of the contents of the boarding-house, so as to make the defendant responsible to the plaintiff for the full value thereof; and that, in computing the value of said property, it was competent for the jury to consider what it was worth to wear out, and, further, that she was entitled to such damages as the jury might find she had sustained by reason of the loss of her possessory right in the premises.

The defendant asked the judge to instruct the jury as follows : " 1. The existence of small-pox in the boarding-house occupied by the plaintiff gave the defendant, in his official capacity, legal authority to enter the premises from time to time during the continuance of the disease, to display a red flag on the premises, and to station such persons as he might deem necessary on or near the premises to guard against ingress and egress, for the purpose of preventing the spread of the disease. 2. It also gave the defendant in his said capacity authority to cleanse and fumigate the rooms of said house, as well as all such articles as were infected, if in his judgment this was necessary to prevent the spread of the disease. 3. Whatever was done by the defendant at the boarding-house in his official character, whether by himself personally or by his agent, if it was done with discretion, and with no wrong intent, but for the sole purpose of preventing the spread of the infection and to secure the common safety, and was in the defendant's judgment reasonably necessary for this purpose, he is not liable in this action, unless he is shown to have taken possession of the plaintiff's property to the exclusion of her use, possession, or control, or to have injured or destroyed the same, or to have converted it to his own use; and to establish such possession or conversion on the part of the defendant, it must appear that the plaintiff was wholly deprived of such use, possession, and control, and that the same was not due to her physical incapacity. 4. Whatever the defendant was authorized to do himself, he might legally employ others to do for him. 5. But to make the defendant legally responsible for the acts of any other person, he must not only have acquiesced in

and approved of such acts, but, unless such other person was his own duly appointed agent, he must have specially directed such acts.    6. The defendant would not be personally liable for the wrongful acts of an agent appointed by him in his official capacity.    7. The stationing of a person at or near, but outside, the house, with instructions to prevent entrance to and egress from the house, would not of itself constitute a conversion of the contents of the house.    8. The stationing of a person at or near, but outside, the house, with instructions to prevent entrance to and egress from the house, would not constitute a conversion of the contents of the house, even if a person applying for admission was refused, if the object of the person so applying had no reference or relation to the property in the house.    9. If the defendant in his official capacity employed Story for a definite and legitimate purpose, and, without the knowledge or direction of the defendant, he did any act, not within the scope of such employment, under the direction of any person other than the defendant, the defendant would not be responsible for any of such acts.    10. The defendant cannot be made personally responsible for the acts of any person simply by reason of his having drawn orders as a selectman, with other members of the board, in payment for the services which include such acts.    11. In estimating the value of such articles as became infected at the boarding-house without the fault of the defendant, the jury must consider them in their infected state, and determine their value in that condition.    12. So far as the conversion of personal property is concerned, the rule of damages is the market value of the property."

The judge instructed the jury as follows: "Selectmen of a town, if no board of health is elected by that town, become charged with the duties, and have the powers, of a board of health.    Among these is the duty and power to cause the removal of a person found in that town, when infected by a sickness dangerous to the public, to a house or place apart from other inhabitants of that town, and to provide nurses, necessaries, and other assistance, at the cost of that town, for the treatment and care of the person thus removed, and the protection of other persons from infection.    If a person thus infected cannot be removed from the place in which he is found, without

danger to his health, the board of health may provide nurses, necessaries, and other assistance for such infected person, at the cost of that town, in the house or place in which he is found. The board of health may also cause red flags to be put upon a house where an infected person is, and cause public placards and notices to be put up or published, or oral proclamations to be made, warning all persons of the place in which infected persons are. The powers of the board of health in the matter of taking care of infected persons in either of the methods stated may be exercised by all of that board, or by any one of them, in the absence or disability of the others, without any vote or formal or recorded proceedings of that board. If the acts of any one of the board of health constitute the sole exercise of the powers of that board in the matter of infected persons in either of the methods stated, their acts will be valid, if requested, ordered, or concurred in by the other members of that board."

The judge further instructed the jury, that the board of health would have no authority to use, appropriate, or destroy the property of the plaintiff, excepting by such formal proceedings as are pointed out in the Pub. Sts. *c.* 80, §§ 43, 44, *& seq.;* and that such board would have the right to station persons near the premises to warn all persons of the existence of the disease, but would have no right to station a person at the plaintiff's boarding-house with directions to prevent entrance to or exit from such boarding-house, and, if such directions were carried out, they would be an invasion of the plaintiff's rights.

As to the rule of damages, the jury were instructed that, if they found that the plaintiff's property had been wrongfully taken, used, or destroyed by the defendant, she was entitled to recover what it was worth at that time; but that they were to consider how much the value of the goods had been affected by the exposure at that time.

The judge further instructed the jury, that, to make the defendant responsible, they must find that the acts complained of were done either by him personally or by his agent; that if the defendant, through Story or any other person, took possession of the house of the plaintiff, and the furniture therein, and used, occupied, and controlled the house to the exclusion of the plaintiff's use and control of the same, and, while exercising said

control and occupation, appropriated the furniture, stores, food, clothing, and other personal property of the plaintiff, and carried away portions of it to other places, and destroyed portions of it, he was liable; that if the defendant unlawfully seized, held, and controlled said property, he was liable directly for all injuries that naturally and reasonably and proximately befell the personal property by reason of such unlawful seizure; that, if the original seizure was unlawful, the rule of damages was the injury done to her possessory right to the real estate, and also the value of the personal property at the time of such unlawful seizure; and that, if the personal property became infected or depreciated by reason of the unlawful use of the defendant, such depreciation was the loss of the defendant, and could not be deducted from the value of the property at the time of the unlawful seizure.

As to the tenth request of the defendant, the judge instructed the jury that the drawing of town orders in payment of the services rendered by the parties in the removing and destroying property of the plaintiff, and other acts complained of, was only evidence of his employment of these parties to do what they did.

Excepting so far as they were embraced in, or inconsistent with, the foregoing instructions, the judge refused to give the instructions as prayed for by the defendant; but other instructions were given to which no exception was taken.

The jury returned a verdict for the plaintiff in the sum of $815.22; and the defendant alleged exceptions.

*C. L. Gardner*, for the defendant.

*G. M. Stearns & S. S. Taft*, for the plaintiff.

DEVENS, J. Before considering the instructions requested by the defendant, it is proper to call attention to the different and distinct duties and powers of the board of health where a person ill with an infectious disease is found in a house, so sick that he cannot be removed, and where he is not so sick but that he may be removed with safety. In the latter case, the board of health may make provision, in the manner it judges best for the safety of the inhabitants, by removing the person " to a separate house or otherwise," and " by providing nurses and other assistance and necessaries." Pub. Sts. *c.* 80, §§ 40, 41, 75. Section 40 contemplates that, if the person under such circumstances is taken care of where he is, it will be by virtue of some

contract that he shall be thus provided for. *Spring* v. *Hyde Park*, 137 Mass. 554, 557. If it is necessary to remove him, ample provision is made therefor. Should he object to the removal, a warrant authorizing the removal may be issued by two justices of the peace. Pub. Sts. *c.* 80, § 43. A suitable place to which he can be removed may be provided by authority of the sections of the same chapter which authorize contracts to be made for hospitals and houses, to be impressed upon proper proceedings had. §§ 43–48, 70–75.

If a person cannot be removed without danger to health, "the house or place where he remains shall be considered as a hospital, and all persons residing in or in any way concerned within the same shall be subject to the regulations of the board as before provided." § 75. By reference to the preceding section it is seen that, when a hospital is established, " the physician, nurses, attendants, the persons sick therein, and all persons approaching or coming within the limits thereof, and all furniture or other articles used or brought there," are subjected to such regulations as the board of health may prescribe. § 74. These sections do not authorize the taking possession by the board of health, acting without a warrant, of premises to the exclusion of the owner thereof, or of the person entitled to lawful possession, even where one is too sick to be removed; but authorize such premises, and the use thereof, to be subjected to regulations of a very stringent character. Section 41 contemplates that, when a person cannot be removed, a contract may be made for his comfort where he is, and, in such case, persons in the neighborhood may be removed, and other precautions taken.

Assuming, in behalf of the defendant, who acted for the board of health, that all he did was done honestly for the purpose of preventing the spread of the small-pox, and for the safety of the inhabitants, it was necessary that he should act within the authority given him by the statute; and the general instructions set forth this authority clearly and distinctly.

We proceed to consider such of the numerous requests for instructions made by the defendant as seem to call for remark in this connection.

Although the disease was of a dangerous type, the case presents no evidence that the plaintiff, and those of her guests

who were also infected, could not have been removed without danger to health, or that the defendant acted upon the theory that they could not. Nor does it appear that the defendant, in that which he did, acted in any way by virtue of any contract with the plaintiff, or of any authority from her, but always *in invitum.*

The defendant contends that he was entitled to the instruction that he was authorized " to station such persons as he might deem necessary on or near the premises, to guard against ingress or egress, for the purpose of preventing the spread of the disease." We are not prepared to say, that, if the infected persons could not have been removed, the board of health — acting either under the authority of the Pub. Sts. *c.* 80, § 41, which permit the board " to take such other measures as it judges necessary for the safety of the inhabitants," or that of § 75, which, under such circumstances, permits the board to consider the place as a hospital, and to subject it to regulations as such — might not have forbidden ingress and egress except under such restraints as the board might impose; but the mere fact that small-pox existed on the plaintiff's premises did not authorize the defendant thus to control them, in the absence of any contract with or authority from the owner. While, when such a disease exists in a town, the board of health are to use all possible care in preventing the spread of infection, and to give public notice " by displaying red flags," and " by all other means which in their judgment shall be most effectual for the common safety," this care is to be exercised in the mode prescribed by law, and with that regard to the rights of others in their persons and property which is shown by other sections of the statute to be required. By the general authority to take such measures as are deemed necessary for the safety of the inhabitants, it is not intended to confer unlimited authority on the board to control persons and property at its discretion. The case at bar does not require us to consider what would have been the right of the board of health in case the person infected could not have been removed, nor what would be its right in case there could be a removal, and ingress and egress were forbidden only while this was being effected. It is to be observed that, while §§ 40, 41, 75, 76, and 77 do not ordinarily apply, so far as removal of patients from their houses is concerned, to cases of

small-pox, the present case is within the exception to the rule, as those infected were persons residing in a boarding-house. § 82.

Similar considerations apply to the second request of the defendant. The defendant did not act under those provisions of the statute which authorize the removal of nuisances, causes of sickness, &c. §§ 18–27. His right to take possession of the house, or any portion of it, fumigate it, &c., depended upon the inquiry whether the infected persons could be removed therefrom. If they could not, the authority given under §§ 41 and 75 might entitle the defendant to take the necessary steps to fumigate and disinfect such part thereof as those persons infected occupied, or such as were liable by their occupation to infection, but no such case as this is shown to have existed. Certainly the whole request could not have been granted, as this would have justified the taking possession of all infected articles, if, in the judgment of the defendant, this was necessary to prevent the spread of the disease. Where there are infected articles that should be cleansed or destroyed, provision is made for the issuing of a warrant by a justice, to be executed by the sheriff, under the direction of the board of health, by virtue of which such articles may be seized and destroyed, under the usual safeguards which attend the execution of legal process. §§ 44–48.

The remaining requests do not appear to call for extended comment. The third is somewhat involved in expression, but it was sufficiently given, in holding the defendant liable only in case he controlled the house to the exclusion of the plaintiff, and carried away or destroyed the property of the plaintiff.

The fourth, fifth, sixth, and ninth requests were covered by the instruction that the defendant was responsible only for acts done by himself or his agents. The seventh and eighth required the judge to select particular pieces of evidence, and to rule as to the effect to be given to them when there was more evidence on the same point. This the defendant could not properly ask. The tenth and eleventh requests were given in substance.

The rule for damages as to the personal property, that it should be what the property was worth at the time, and requiring the jury to consider how much their "value" had been affected by their exposure, was correct. *Selkirk* v. *Cobb*, 13 Gray, 313. *Exceptions overruled.*