JOHN W. HERSEY *vs.* WALTER H. CHAPIN & others.

Hampden.     September 25, 1894. — October 18, 1894.

Present: ALLEN, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Trespass — Board of Health — Infectious Disease — Action — Tenant at Will —
Damage to Reversion.*

The board of health of a city cannot, without the consent of the owner, lawfully
establish and use premises as a hospital for patients sick with the small-pox,
except under a warrant issued in accordance with the provisions of Pub. Sts.
c. 80, § 43.

An owner of land, who is not in possession and has no right of possession thereof,
cannot maintain an action of trespass *quare clausum fregit*, but may maintain an
action for an injury to the reversion.

The owner of a house in a city which, while in the possession of a tenant at will, is
taken and used, without the owner's consent, by the board of health of the city
as a hospital for parties sick with the small-pox, may maintain an action against
the members of the board for the injury to his reversion, if it appears that such
use of the house diminished its rentable value.

A tenant at will in possession of a house in a city cannot, as against the rights of
the owner, authorize the board of health of the city to establish in the house a
hospital for patients afflicted with an infectious disease, and to maintain such a
hospital there to the damage of the reversion.

TORT, in three counts.    The first count was for breaking and
entering the plaintiff's close in Springfield.    The other counts
were for taking possession of and using the plaintiff's premises
without his consent, as a hospital for patients sick with the
small-pox.    Trial in the Superior Court, before *Dewey*, J., who
allowed a bill of exceptions, in substance as follows.

The defendants constituted the board of health of the city of
Springfield for the year 1893.    It appeared in evidence that the
plaintiff was the owner of a building in Springfield, worth about
$3,000, which was occupied by two tenants, both holding as ten-
ants at will, one of whom was named Collins.    On February
16, 1893, the physician who had been attending a son of Col-
lins, who lived with his father, announced that he was sick with
the small-pox, and reported the case to the agent of the board
of health.    On the same day, after the case had been reported,
one Bridget Dowling visited the tenement of Collins, went to
the door of the room in which the son was sick in bed, stood at

the threshold of the door a short time, and there contracted and subsequently came down with the small-pox. On the morning of February 17, the defendants, acting by their agent, went to the house, posted up notices that it was infected with the small-pox, hung up a red flag, and stationed an officer on the outside of the building to regulate the ingress and egress therefrom. The agent of the board suggested that the patient be removed, but his physician refused to allow his removal, and his parents insisted that he be allowed to remain with and be cared for by them ; and the other tenant in the building did not object to his so remaining. From February 17 to March 22 the board of health maintained a guard around the house, and during that time the same was effectually quarantined; and on March 22 the premises were thoroughly, properly, and effectively disinfected, and the quarantine was raised, and any control over the premises by the board was released. At the expiration of the proper period of time, Bridget Dowling came down with malignant small-pox. She was rooming in another part of the city, and, up to the time she came down, the son of Collins who was sick had been attended by his own physician, and the affairs of the Collins family were, in the matter of nursing the son, cooking, and caring for the family, managed and controlled by them ; the board of health, however, provided for the family some disinfectants, groceries, and coal, and perhaps a few other articles. On a certain night, after dark, about two days after Dowling was taken sick, the Collins family, without any authority from or any knowledge of the defendants, or any person acting for them, sent a person, who came to the window and talked with them, to the room of Dowling, and had her brought to their house, where her presence was not known to the defendants, or any one representing them, until the next morning, when they learned of the fact, and of her sickness with the small-pox. As soon as the plaintiff learned of the presence of Dowling in the house, he demanded of the defendants that she be removed to the pesthouse; which demand was not complied with. At the time the Collins family had Dowling removed to their tenement, the son, though much better, was still sick ; but there was evidence tending to show that, had Dowling not been taken there, the house would have been opened to the

public on the Saturday following. Dowling remained in the house under the care of her own physician, and nursed by the Collins family, for about a week, when she died. It appeared that the tenants who were in the house remained and paid their rent until the September following, when the upper tenant vacated; and that the Collins family remained, and were tenants at the time of the trial. There was evidence tending to show that applicants for the vacant tenement objected to hiring the same on being informed by the plaintiff that the small-pox had been in the building, although assured that it had been thoroughly and properly disinfected; that it was more difficult to disinfect a building after there had been in it a type of small-pox such as Dowling had, than after such a type as that with which the son of Collins was sick; that fifteen days' properly disinfecting would be a safe period after which to allow persons to rent and occupy the building ; and that, if no small-pox appeared from its use up to the time the tenement was vacated, it would show that the building was effectually disinfected.

The jury found specially that the defendants, as a board of health, by their acts established and carried on the premises as a hospital; and there was evidence not herein stated tending to show that they so established and carried on the premises.

The defendants requested the judge to instruct the jury as follows: " 1. On all the evidence in the case the plaintiff cannot recover.  2. If the defendants took possession of the house with the consent of the tenants, the plaintiff cannot recover. 3. If, at the time the defendants took possession of the premises, they were in an infected condition, the plaintiff cannot recover.  4. If the patient Dowling was taken to the premises without the knowledge or consent of the defendants, or of any party lawfully representing them, the plaintiff cannot recover any additional damages by reason of her having been taken to the house.  5. Under the evidence in the case, the admission of Dowling to and her sickness in the house are not to be considered as an additional element of damage."

The judge declined to give the instructions requested, and instructed the jury that, although the right of possession was in the tenants, it was a question of fact for them whether the use of the premises by the defendants affected their market value;

that if such use affected the substance or value of the property, then the plaintiff might recover whatever damage such use caused; that he could not recover for any damage to the value of the property which resulted from the small-pox having been in the premises prior and up to February 17; that it made no difference with the rights of the plaintiff that the tenants consented that the son should remain in the building; that the defendants would not be liable for the admission of Dowling to the premises, but would be liable for thereafter using the premises as a hospital for her care, and for any damage which such use caused the plaintiff by its affecting the market value of the property; that the plaintiff was not entitled to recover any damage except such as affected him as owner, in distinction from an occupant of the premises; and that the injury must affect the substance of the premises, and thereby affect their market value.

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*C. L. Long*, for the defendants.

*E. H. Lathrop*, for the plaintiff.

KNOWLTON, J. In this case the jury found specially, from evidence a part of which is not reported, that the defendants, acting as a board of health, established and used the plaintiff's premises as a hospital. This they could not lawfully do without the consent of the owner, except under a warrant issued in accordance with the provisions of Pub. Sts. c. 80, § 43. The finding of the jury, therefore, establishes, for the purposes of this case, the proposition that the defendants acted without lawful authority, and that they are therefore liable to any person who suffered damage in his property from their unlawful act. *Spring* v. *Hyde Park*, 137 Mass. 554. *Brown* v. *Murdock*, 140 Mass. 314, 317.

The plaintiff was not in possession, and had no right of possession, of the property used, and he cannot maintain an action of trespass *quare clausum fregit*. *Bascom* v. *Dempsey*, 143 Mass. 409. *Gooding* v. *Shea*, 103 Mass. 360. *Woodman* v. *Francis*, 14 Allen, 198. But the declaration contains counts for an injury to the reversion, and the question is whether there was evidence to warrant the finding that there was such an injury.

The tenants in possession were only tenants at will, and the plaintiff as owner could terminate their respective tenancies at short notice. If he wished so to do, the fact that the premises had been used as a hospital for patients sick with small-pox might naturally diminish their rentable value. In that way the plaintiff's right may have been affected to his detriment.

It appears that one of the tenements became vacant a few months after the guard was removed from the house, and there was evidence that applicants for the tenement objected to hiring it on learning that small-pox had been in the building. The jury might well find that the plaintiff suffered damage in this way.

The tenant at will in possession could not, as against the rights of the owner, authorize the defendants to establish a hospital for patients afflicted with an infectious disease in the plaintiff's house, and to maintain such a hospital there to the damage of the reversion. An attempt to do that would have been a violation of the owner's right which would have justified him in treating the tenant as a trespasser. *Chalmers* v. *Smith,* 152 Mass. 561.

We are of opinion that the rulings requested were rightly refused, and that the instructions given were correct and sufficient.                              *Exceptions overruled.*