## TOWN OF KNIGHTSTOWN v. HOMER.

[No. 5,391.   Filed June 30, 1905.]

1. PLEADING. — *Complaint.* — *Sufficiency When Attacked First Time on Appeal.*—A complaint will be held sufficient, when questioned for the first time on appeal, if it states facts sufficient to bar another action for the same cause, unless it states facts which destroy plaintiff's cause of action.   p. 142.

2. HEALTH.—*Town Boards.—Contagious Diseases.—Statutes.*— Under §6718 Burns 1894, Acts 1891, p. 15, §8, it is the duty of town boards of health to prevent the spread of smallpox, and the cost incident thereto is chargeable to such town.   p. 143.

3. APPEAL AND ERROR.—*Transcript.—Failure to Include Demurrer.*—A failure to include a demurrer in the transcript on appeal is fatal to any question on the ruling of the trial court thereon.   p. 144.

4. HEALTH.—*Smallpox.—Prevention of Spread.*—Where a person became afflicted with smallpox in a town and was quarantined at plaintiff's home, and subsequently a physician attending such patient was also stricken, an emergency existed authorizing the secretary of the town board of health to contract for the prevention of the spread of such contagion, and the costs occasioned thereby are chargeable to such town.   p. 144.

5. SAME.—*Statutes.—Powers of Health Board.*—The statute (§6718 Burns 1894, Acts 1891, p. 15, §8) directing local boards of health to prevent the spread of contagious diseases will be liberally construed so as to attain the desired object.   p. 146.

6. **HEALTH.** — *Destruction of Property.* — *Compensation.* — *Rules Governing.*—Where plaintiff voluntarily received into her home a person supposed to be sick with measles, and such disease was really smallpox, but she made no request for such person's removal, and by order of the town board of health certain personal property was burned because of such contagion, the rule of compensation is the value of such articles at the time of destruction and not at the time such person was discovered to have such disease.   p. 146.

7. **SAME.**—*Contagious Diseases.*—*Services for Member of Family.* —*Liability.*—A mother can not, unless shown to be indigent, receive compensation from a town for taking care of her son who was afflicted with smallpox.   p. 147.

8. **SAME.**—*Contagious Diseases.*—*Nursing.*—One engaged by the secretary of a town board of health to nurse a smallpox patient can recover therefor from such town.   p. 148.

9. **SAME.**—*Boards of.*—*Liability of Towns.*—A town is liable for the destruction of property by its board of health acting within the scope of their authority for the prevention of the spread of contagious diseases.   p. 148.

From Henry Circuit Court; *John M. Morris,* Judge.

Action by Pearl Homer against the Town of Knightstown. From a judgment for plaintiff, defendant appeals. *Affirmed conditionally.*

*L. P. Newby* and *Forkner & Forkner,* for appellant.
*Eugene Bundy* and *William A. Brown,* for appellee.

MYERS, P. J.—This was an action by appellee against appellant to recover for service rendered Jesse Swain, Dr. Stanley and appellee's minor son, smallpox patients, and for damages to property belonging to appellee, destroyed to prevent smallpox contagion in the town of Knightstown.

The facts as stated in the complaint, so far as material, are as follows: In the month of June, 1902, the appellee, her husband and one child were living in their home in the town of Knightstown, Indiana. During said month Jesse Swain, while at the livery barn of appellee's husband, Ed Homer, became afflicted with a virulent and contagious disease known as smallpox. Appellant, by and through its

health board, and through the orders and directions of the secretary of the said health board, and at the request of appellee's husband, directed that said Swain be taken to the home of appellee, which was done. As soon as said Swain was taken into appellee's home the appellant, by and through its health officers, quarantined appellee and her son in her home with said Swain, and compelled appellee to nurse said Swain, and refused to permit her or her said son to leave said home. Dr. Stanley, while attending said Swain, took sick at the home of appellee, and said health officer ordered, directed and demanded that said Stanley remain in said home of appellee, and ordered, directed and commanded appellee to take charge of said Stanley and nurse and wait upon him during his said sickness. Upon the order of said health officers, appellee did render and perform for said Swain services as a nurse, and nursed, cared for and waited upon him for a period of thirty days, and performed the same services for said Stanley for a period of thirty days, and that the services so rendered by appellee during said period of sixty days were reasonably worth $5 per day. Said services so ordered and commanded by appellant, and so performed by appellee, were services necessary to prevent the spread of said disease in said community, and were necessary to the preservation of the general health of the citizens of said town. Said Swain while at the home of appellee, from the effects of said disease, died. Said Stanley recovered. Immediately thereafter appellant's minor son became sick with said disease, which he contracted from said Swain solely by reason of said Swain's being confined and quarantined in appellee's home by appellant, and appellee was thereby compelled to nurse and care for said minor child, which services so rendered in nursing said child on account of said sickness were of the value of $50. After the recovery of appellee's said child, appellant, by order and command of Dr. O. H. Barrett, then secretary of appellant's local board of health,

ordered its police to enter appellee's home and destroy by fire all the household goods, kitchen furniture and wearing apparel of herself and said son, together with all the draperies, carpets, window curtains, bed and bedding owned by the appellee, which was done by said appellant, as ordered, all of which was done because of the necessity then and there existing to preserve the general health of the citizens of said town, and to suppress and prevent the spreading of said disease among the people of said town and vicinity, and which was done as ordered by said secretary of said board of health. The goods so destroyed were of the value of $300. A bill of particulars of the goods so destroyed is made a part of the complaint. Judgment for $700 is demanded.

It appears from the record that a demurrer was filed to this complaint and overruled. The demurrer is not in the record, and we are not advised on what grounds the demurrer was filed. Appellant answered in two paragraphs. The first, a general denial. Appellee replied to the second paragraph of answer by general denial. The issues thus formed were submitted to a jury for trial, resulting in a verdict and judgment for $200 in favor of appellee.

Appellant's motion for a new trial was overruled. It appeals to this court and assigns errors: (1) That the complaint does not state facts sufficient to constitute a cause of action; (2) the court erred in overruling the demurrer to the complaint; (3) the court erred in overruling appellant's motion for a new trial.

A complaint tested for the first time in this court will be held good if it contains facts sufficient to bar another action for the same cause, although its averments

1. may be objectionable for uncertainty and inadequacy, or for stating conclusions instead of facts, upon the theory that such facts or conclusions, strengthened by the verdict, are to be given the benefit of every reasonable intendment and doubt, even to the extent of supply-

ing omitted facts, resulting as a natural sequence from the facts averred. But this rule does not obtain when the defect is a failure to aver some fact or facts essential to constitute a cause of action, or, from the facts averred, plaintiff's right to recover is clearly denied. *Efroymson* v. *Smith* (1902), 29 Ind. App. 451; *Cleveland, etc., R. Co.* v. *Baker* (1900), 24 Ind. App. 152; *Bertha* v. *Sparks* (1898), 19 Ind. App. 431; *Evansville, etc., R. Co.* v. *Darting* (1893), 6 Ind. App. 375; *Brandis* v. *Grissom* (1901), 26 Ind. App. 661; *Stockwell* v. *State, ex rel.* (1885), 101 Ind. 1; *City of South Bend* v. *Turner* (1901), 156 Ind. 418, 54 L. R. A. 396, 83 Am. St. 200.

By §6718 Burns 1894, Acts 1891, p. 15, §8, the trustees of each town in this State shall constitute *ex officio* a board of health for such town, and it is made the duty of such board to "elect a secretary, who shall be the executive officer of the board," and it is the duty of such board "to protect the public health, by the removal of causes of diseases, when known, and in all cases to take prompt action to arrest the spread of contagious diseases."

2.

The complaint in the case at bar alleges that, at a livery stable belonging to appellee's husband, one Swain became afflicted with the disease of smallpox. Smallpox is a contagious disease, and by statute the town board was required to take immediate and active measures to prevent its spread. The party so afflicted was found in what may be termed a public place. The patient was ordered into the home of appellee by the "health officer" of the town. While it appears that this order was at the request of the husband of appellee, yet it does not appear that appellee was consulted, or had any information as to the condition or character of the disease with which Swain was afflicted until after he had been installed in her home, where her property, thereafter destroyed upon the order of the town health officer, was

situated. The discovery of a contagious disease like small-pox in a thickly settled community like the town of Knights-town, Indiana; whether one or more cases, creates an im-mediate necessity for activity on the part of those charged with the duty of preventing its spread, and creates a liabil-ity on the part of the town to pay any necessary expense in-curred by its health board, or, in the absence of an order of its health board, the expenses incurred by its "health officer" under such an emergency. Therefore, giving to the averments of fact stated in the complaint the benefit of every intendment and doubt, as authorized by the principles of law enunciated in the cases above referred to, the com-plaint states facts sufficient to withstand an attack after verdict, and for the first time on appeal.

No available error can be predicated upon the ruling of the court on a demurrer not copied into the record. *Kahn v. Gavit* (1899), 23 Ind. App. 274; *Samples v. Car-nahan* (1898), 21 Ind. App. 55; *Jones v. Mayne* (1900), 154 Ind. 400.

Appellant's motion for a new trial contains many reasons in support thereof. We will only consider those by it dis-cussed. (1) The verdict is not sustained by sufficient evi-dence. The bill of particulars filed with the complaint ag-gregates $450.15, of which $350 is for nursing the parties mentioned in the complaint, and the balance for property destroyed.

From the evidence it appears that on Thursday, May 29, 1902, and without objection on the part of appellee, and at the direction of appellee's husband, Jesse Swain, a nephew of appellee's husband, was taken into the home occupied by appellee and her husband. A physician was called to attend Swain. The patient was sup-posed to have, and was treated for, measles until the follow-ing Sunday evening, when he was found to be suffering from a very severe attack of smallpox. Appellee and her son, a child eight years old, were immediately quarantined

in the house with Swain. Swain was without any property or means whatever. On Sunday evening he became delirious, and continued in this condition most of the time during Sunday night and the next day, and in his delirium would have left the house and gone onto the streets of said town, but for the efforts of appellee. On Sunday evening when Swain's affliction was diagnosed to be smallpox, and after Dr. O. A. Barrett, the secretary of the board of health of said town, had been so notified, appellee applied to him, asking that he provide a nurse to care for Swain, and was told, ordered and directed by said health officer to care for said patient, which she alone did until the evening of the following day, when one Morrison, a nurse, came and took charge of the patient. From that time until the patient died on Monday evening, June 9, appellee assisted Morrison in the care of Swain, by preparing tea, carrying water for him, and providing him with bed linen with which to change the patient's bed, and doing other errands as requested by Morrison. It also appears from the evidence that Dr. Stanley came to her home on Tuesday morning, June 3, and there remained for the purpose of rendering medical aid to Swain. On Tuesday morning, June 10, and while at appellee's home, Dr. Stanley was taken sick with what at first was supposed to be smallpox, but later this impression was found to be erroneous. Appellee on June 10 notified Dr. Barrett of Stanley's sickness, and, at the request of Barrett, appellee alone cared for and nursed Stanley until the following Saturday night, when Morrison returned and took charge.

An emergency appeared to exist, sufficient to authorize the secretary of the board of health of appellant to act, when he directed appellee to nurse Swain and Stanley, and to bind the city to pay for services rendered Swain and Dr. Stanley from the time they took sick until Morrison, the nurse, was employed and took charge. *Monroe* v. *City of Bluffton* (1903), 31 Ind. App. 269.

Vol. 36—10

As we have heretofore said, by our statute (§6718, *supra*) it was the duty of the board of health of the town of Knightstown to "protect the public health by the removal of the causes of diseases, when known," and to take prompt action to prevent the spread of contagious diseases.

From the evidence in the case at bar, the contagious disease was present and within the jurisdiction of the board. It was its duty to take prompt action to prevent its spread. It could not shift the responsibility, and, on the facts here presented by the evidence, the language used by this court in the case of *Board, etc.*, v. *Fertich* (1897), 18 Ind. App. 1, is clearly in point; that is to say: "The expenses assumed by the county should not be too narrowly confined. The county board of health should be regarded as having authority sufficient to protect the public health. The afflicted persons should not be required to defray expenses not incurred for their own benefit. Expenses authorized by the board of health for the public benefit should be defrayed by the benefited public. So far as indebtedness is incurred, not upon the credit or under the contract of the afflicted person, but by direction of the board or by its authority, which is occasioned by reason of the measures taken by the board to protect the public health by preventing the spread of the disease, to that extent payment should be made by the county. The particular items of expense for which allowance should be made will vary with changed circumstances, and only the general principle which should govern the board in making allowances can be here pointed out."

It also appears from the undisputed evidence that under the direction of Dr. Barrett, and superintended by Dr. Stanley, certain property mentioned in the complaint, of which appellee was the owner, was on the night of the death of Swain taken from the house and burned, which property was shown to be of the value

of $75 at the time Swain was taken to the home of appellee, and worthless at the time destroyed. Under this evidence in considering the value of the property destroyed, did the rule for fixing the amount of damages apply to the value of the property at the time it was discovered that Swain was afflicted with smallpox, or at the time the property was taken by the board of health and destroyed? Swain was in appellee's home not by any act or command of the board of health or its secretary, but he was there at the direction of appellee's husband and with appellee's consent, and there remained until his death, without request from appellee to anyone for his removal. Under these facts the rule for assessing appellee's damages for the property so taken, if appellant was liable therefor, should be what the property was worth at the time it was destroyed. *Brown* v. *Murdock* (1885), 140 Mass. 314, 3 N. E. 208; *Selkirk* v. *Cobb* (1859), 13 Gray 313. If the rule here announced for the assessment of damages be correct, and the property burned was worthless at the time it was so destroyed, as appellee testified, then there can be no recovery for the item of property, as no damages were proved.

It further appears from the evidence that shortly after the death of Swain appellee's child was taken with varioloid, and that appellee nursed and cared for him until his recovery, for which she claims $50. There is nothing in the evidence which shows that appellee was in indigent circumstances, or was not clearly able financially to provide any and all means necessary for the care and attention of her son. She and her son were quarantined in her own home, and, in the absence of a statute making the town liable for such services so rendered by appellee to her son, the town was not liable. *Board, etc.,* v. *Fertich, supra; Dodge County* v. *Diers* (1903), (Neb.), 95 N. W. 602.

The amount of recovery was too large. From what we have heretofore said, it is apparent that appellee's right to

recover in this action is limited to the value of her services performed in nursing and caring for Swain and Dr. Stanley, the reasonable value of which, as shown by the evidence, is $35. Therefore all that part of the judgment in excess of $35 is subject to the criticism claimed by appellant.

(2) Appellant insists that the court erred in giving and refusing certain instructions. After a careful consideration of the instructions given, we are of the opinion they correctly state the law, except as to instruction "a," which is somewhat lengthy, and, without quoting it, we think that part of the instruction applicable to the right of appellee to recover for services rendered is sufficient, even though it does not contain the word "emergency," which we will admit it should contain, but, in view of the evidence, which clearly shows that at the time appellee was employed by the secretary of the board of health, an emergency for such action clearly existed. As to that part of the instruction which applies to the destruction of the property, we think it erroneous, for the reason that it makes the town liable for the destruction of property "by its officers" when done "for the purpose of preventing the spread of disease." Acts for the purpose of preventing the spread of disease are wholly within the jurisdiction of the board of health, and the town can only be made liable when the board acts within the scope of its authority, or for the acts of the secretary of the board when an emergency arises and he is acting within the scope of his authority. *Spring v. Inhabitants of Hyde Park* (1884), 137 Mass. 554, 50 Am. Rep. 334, and cases cited. But as the objectionable part of this instruction, under our theory of this case, occasioned no injury to the appellant, this cause will not be reversed on account of this instruction alone.

Appellant tendered to the court a number of instructions which were refused, which, in view of our present opinion, it will answer no purpose to consider.

Appellant insists that the court erred in the admission of certain evidence. We have carefully examined this evidence, and in our opinion the court committed no error in admitting it.

In view of the entire record here presented, we have concluded to affirm the judgment on condition that appellee, within thirty days from this date, file a remittitur for $165; and, on failure of appellee to file such remittitur within the time herein allowed, the judgment is reversed, with instructions to grant a new trial.