GEORGE P. SHIDLER, APPELLEE, V. YORK COUNTY,
APPELLANT.

FILED APRIL 3, 1914. No. 17,699.

Counties: LIABILITY: HEALTH OFFICERS. A duly licensed physician,
acting under the order of the state board of health in quarantining
and suppressing a highly contagious disease, may recover of the
county, where such disease was prevalent, the actual expenses
incurred by him and the reasonable value of his services.

APPEAL from the district court for York county: GEORGE
F. CORCORAN, JUDGE. Affirmed.

M. M. Wildman, for appellant.

George M. Spurlock and W. L. Kirkpatrick, contra.

BARNES, J.

In the summer and fall of 1909 there was a large number
of cases of what is commonly called "infantile paralysis"
in York county, Nebraska. Doctor George P. Shidler, a
duly licensed physician, was at that time a member of the
board of health in that county, but he was not the county
physician, and was under no contract with, and received no
salary from, the county, as a member of its board of health,
or otherwise. The disease in question was of a most
serious nature, and was fatal in many cases. The path-
ology of the disease was not then very well understood, but,
by reason of its prevalence and character, many of the
communities in the stricken territory were thrown into
a condition approaching panic. Trade suffered, public
schools remained closed after the usual time for them to
begin the fall term, dates of chautauquas and other public
assemblies were canceled, and notably among those com-
munities was the city of York in that county. Mr. John L.
Dorsey, the then chairman of the county board of health,
expressed himself as opposed to a quarantine, and failed
and refused to call a meeting of the county board of health,
or to take any other measures relative to the disease, or to

the investigation or control of it; and no meeting was had by said board of health, and no action whatever was taken by it at any time during the entire year that Doctor Shidler was a member. On July 20, 1909, the state board of health, acting under its power, on information of the condition of affairs in York county, and by reason of the authority contained in section 2738, Rev. St. 1913, met and made an order that said disease be quarantined in York county, and by its order instructed the state health inspector to communicate its order to Doctor Shidler, and to require him to establish and maintain a rigid quarantine of said disease throughout that county. The order was communicated to Doctor Shidler, and in obedience to it, and to the command of the inspector to "get busy," he proceeded to quarantine said disease wherever he could find it in his county, and was occupied with his duties in that behalf from about July 20 to October 1 of the year 1909. It appears that the doctor came in contact personally with about 250 cases of the disease, and devoted his time to those cases to the partial exclusion of his other practice; that in the performance of those duties the doctor incurred and paid necessary expenses in the sum of $225; that for his own services in the premises he charged the county supervisors the sum of $267.50. From this latter sum there was deducted four or five items for the quarantine cases within the proper limits of certain towns and villages. The doctor presented his claim to the county board, and asked for its approval and allowance. The board of supervisors rejected the claim, and the doctor appealed from its order to the district court for York county. On March 13, 1911, both parties in open court waived a jury trial. After the evidence was introduced the court took the case under advisement, and on January 9, 1912, rendered a judgment in favor of the plaintiff and against the defendant county for the sum of $508.60, and costs taxed at $14.75, to which finding and judgment the defendant excepted, and has prosecuted an appeal to this court.

The main question presented by this appeal is: Was the plaintiff entitled to recover on the claims filed against the

county? It is the defendant's first contention that the plaintiff was a member of the county board of health, and therefore he could not employ himself, or take part in his own employment, to perform the services in question, and thus bind the county to pay for the same. In support of this contention the defendant cites many authorities holding that one cannot recover on a contract made with a board of which he was a member. Those authorities are based on public policy, but they are by no means wholly in accord on the question as applied to the services of the kind performed by the plaintiff in this case. It appears, however, that plaintiff did not rely on any contract made with the board of health of York county, for his action was based on a *quantum meruit* for services performed by order of the state board of health, under the provisions of section 2738, Rev. St. 1913, which reads in part as follows: "In addition to such general and standing rules and regulations, in cases of emergency wherein the health of the people of the entire state or any locality therein shall be menaced by or exposed to any such contagious, infectious or epidemic disease or diseases arising from unsanitary conditions, or when a local board of health having jurisdiction of a particular locality shall fail or refuse to act with sufficient promptitude and efficiency in any such emergency, or in localities wherein no local board of health shall have been established, as provided by law, it shall be the duty of the board to adopt and enforce such special quarantine and sanitary regulations as the occasion and the proper protection of the public health may require; and all necessary expenses incurred in the enforcement of such rules and regulations shall be paid by the city, village or county for and within which the same shall have been incurred."

It appears that plaintiff, acting under the order and by the authority of the state board of health, as provided in the part of the section above quoted, performed the professional services and incurred the expenses certified to in his claim; that such services were necessary, and were actually required in order to check the spread of the highly contagious disease above mentioned, and protect, as far as pos-

sible, its stricken victims and others. It appears that the expenses in question were actually incurred and paid by Doctor Shidler, and that the charge for his services was reasonable as to its amount. In such a case we are of opinion that plaintiff was entitled to recover. *Spearman v. Texarkana,* 58 Ark. 348, 22 L. R. A. 855; *Board of Commissioners v. Mitchell,* 131 Ind. 370, 15 L. R. A. 520; *Mayor of Niles v. Muzzy,* 33 Mich. 61; *McBride v. City of Grand Rapids,* 47 Mich. 236; *Boggs v. Caldwell County,* 28 Mo. 586; *Garrett v. Board of Commissioners,* 92 Ind. 518; *Town of Knightstown v. Homer,* 36 Ind. App. 139; *Aull v. City of Lexington,* 18 Mo. 401; *Hawthorne v. Board of County Commissioners,* 79 Kan. 295.

As we view the record in this case, the defendant was liable to Doctor Shidler for the reasonable value of his services, and the expenses necessarily incurred by him in rendering them. The judgment of the district court was right, and is                                  AFFIRMED

SEDGWICK, J., not sitting.