Booth, Judge,
delivered the opinion of the court:
The Kenilworth Company is a North Carolina corporation, incorporated to build and operate a hotel. The company had in process of construction and near to completion a hotel building designed to accommodate 450 guests, which it had designated the Kenilworth Inn. The enterprise was an important one and involved the expenditure of $815,000. The building itself had so far progressed toward completion that on December 11, 1917, the company proposed to the defendant a lease of the entire building and grounds for a convalescent hospital for disabled officers or soldiers. It is not important at present to enter into details respecting various items of rental and other terms and conditions of the lease, -which was finally executed on January 21, 1918, except the one and only covenant of the same which the plaintiff company now alleges the defendant not only failed to observe but positively breached.
The plaintiff company in its proposal set forth in paragraph two the following restriction upon the use of the building:
“(2) The building and property are to be leased to the Government for the purpose of a convalescent hospital for *169 disabled officers or soldiers, but it is especially understood, and the lease shall so provide, that no part of' the property shall be used for the purpose of treating or1 housing any person suffering from tuberculosis in any form, or from smallpox or any other like contagious or obnoxious disease, provided, however, that this shall not apply to a person suffering from tuberculosis housed temporarily in said premises for an operation or the like.”
The defendant refused to accept the restriction as proposed, and offered in its stead the following proposal:
i;(2) The building and property are to be leased to the Government for the purpose of a convalescent hospital for disabled officers and soldiers, but it is especially understood, and the lease shall so provide, that no part of the property shall be used for the purpose of receiving for treatment any person suffering from tuberculosis in any form, or from smallpox, or any other like contagious or obnoxious disease, provided, however, that this shall not apply to a person suffering from tuberculosis housed temporarily in said premises for the purpose of an operation or the like.”
The plaintiff accepted the modification of its proposal, and as thus worded by the defendant’s officerthe restriction as to use was inserted in the contract. The plaintiff company alleges and seeks to prove that in positive violation of the agreed restrictive use of its hotel building the defendant did receive and house for prolonged treatment in said building, and did keep and maintain therein for prolonged periods, a great number of persons suffering from tuberculosis, contagious, and like obnoxious diseases over the protest of the company, and during the entire time of its occupancy; that in addition to receiving for treatment officers and soldiers of the United States afflicted as aforesaid, a large number of interned German prisoners of war suffering from a malignant type of typhoid fever were received and treated at the hospital, many of whom died, resulting from the causes enumerated in a claimed damage to the reputation of the hotel whereby it has, for the time, being at least, lost its attractive force as a public inn, and its use and income as such impaired to the extent of $865,000.
*170 The argument advanced, to sustain the above contention is predicated primarily upon the peculiar climatic conditions obtaining at Asheville, North Carolina, and vicinity. The city of Asheville itself possesses a most alluring aspect, dual in character, and because of its location and climate attracts thereto, a large transient population seeking rest and recreation, and also a considerable number of patients seeking a cure for tuberculosis. Because of this situation and to1 avoid a conflict between the two elements, which would manifestly tend to injure the city’s tourist population, most stringent local laws and regulations have been adopted by the municipality looking towards the complete isolation of tubercular patients from the remaining population, both permanent and transient. The reputation of the town, generally known throughout the country, is such that the course thus pursued is indispensable to its maintenance, and any deviation therefrom is sufficient, especially if premises are let for tubercular patients, to practically destroy a building so demised for use for any other purpose, at least for a long term of years when such use may perhaps be forgotton.
The claim is likened to an injury to the reversion by a tenant in possession under a lease; not the commission of waste, etc., but breach of contract, violation of an express contract. The measure of damages is concededly the extent of injury, not to the freehold itself, this having been satisfactorily adjusted, but to the contemplated use in the future, of the premises demised, it being alleged that it will require years to outlive the fact that patients of the kind proscribed in the lease were treated in the inn. Emphasis is put upon two cases decided by the Supreme Court of Massachusetts— Hersey v. Chapin, 162 Mass. 176, and Delano v. Smith, 206 Mass. 365. This case, in point of fact, is so directly opposed to the situation adjudicated in the cases cited that it is difficult to perceive their applicability. A tenant in possession of a dwelling house under a lease is assuredly obligated, as these cases hold, to refrain from subletting the premises for use as a smallpox hospital — a pesthouse — to the injury of *171 tlie reversion. Tlie distinction, a very important one, between tlie cases cited and tbe issue here is that the owner of the premises, the owner of the reversion, let the premises as an original proposition for use as a hospital. By its own lease the plaintiif contemplated the incidental injury to the reversion arising from mere use and occupation, if any such occurred, and is presumed to compensate itself therefor in the fixed rental. The issue here is a direct contractual relationship between the owner of the premises and the tenant, and an allegation of breach of the same. The mere fact that the plaintiff intended to use the building as a hotel is without significance. The owner was in nowise constrained to elect to rent it as a hospital instead. What the plaintiff did was to rent the building as a hospital, with a restrictive clause in the lease, and it is the violation of this clause, if any, for which recovery may be had. If the owner of a dwelling voluntarily demises the same as a hospital, may he recover damages because its use as a hospital prejudiced its future occupation as a dwelling? Manifestly not. The question we must meet is the ascertainment of a breach of the contract and the damages accruing from the breach.
The difficulty which confronts the coui't, granting argu-endo the facts and the law as contended for, is the ascertainment of a basis for assessing damages. We may well surmise, and it is doubtless true, that the class of patrons the Kenilworth Inn was designed to entertain and accommodate would be positively deterred from going there if made acquainted with the use of the building during the war; nevertheless, it was in the beginning the voluntary act of the plaintiff company itself which changed the character of the inn, at least temporarily, from a hotel building to a Government hospital. The Government did not commandeer it, and so far as this record discloses, did not seek the lease. Need we augment this observation with the obvious fact that such a lease, irrespective of its restrictive terms and conditions, 'known alone to the parties thereto, was sufficient in Ashe-ville to jeopardize the reputation of the inn as a high-class tourist resort ? The witnesses in the record testifying as to *172 damages, fix tlie. amount upon the damages incident to a well-known and distinct lease of premises for a tubercular hospital, without considering that the lease of a hotel for a Government hospital during the Avar or any other time, is ipso• facto sufficient to induce a prospective guest to seek accommodations in another hotel never so used. To Avliat extent the receipt and treatment of a limited number of tubercular patients might increase the damages is not demonstrated. The hypothesis upon which the proof proceeds is the assertion of the fact that a hotel converted into a tubercular hospital is practically destroyed as a hotel for years thereafter, without considering the proposition that a conversion of the property by tlie voluntary act of the OAvners into a hospital of any character Avould necessarily encounter a reputation, at least to some extent, injurious to the same as a high-class inn, when it again comes into open competition with others not so used. So that it seems to us that the mere fact of housing tubercular patients, and others with like obnoxious diseases, was not altogether the direct and proximate cause of the damages suffered, especially so when the express terms of the lease conceded their admission for a particular purpose.
Tubercular and all other patients, irrespective of their affliction, were to be received in surgical cases. While tlieir continuance in the hospital may have been temporary, may we conclude that knowledge of their reception, even for this single purpose, was not sufficient in Asheville, where the situation in this respect is decidedly acute, to Avork a measure of injury to the reputation of the inn? In addition to this, the situation becomes more confused by the fact that the inn itself had never been opened to the public as a hotel and had never been operated as such. No guests had registered and none invited until long after the expiration of this particular lease. Manifestly, without some evidence of the success of the enterprise and some basis upon which to rest a judgment as to impairment of income, it would be no more than mere speculation to hold that the property in question would have been a profit-yielding venture. The defendant did not prevent the company from resuming the enterprise as a hotel proposition upon the *173 expiration of the lease complained of. The plaintiff company, on the contrary, voluntarily entered into two additional leases, extending the use of the building as a hospital, and submitted to the elimination therefrom of the very restrictive clause of which it now complains, and thereafter tubercular patients were received therein and treated for the disease. Up until December 31, 1922, the inn was continuously used and occupied by the Government as a hospital. If, then, the plaintiff company for a period of practically five years demised its premises for use as a hospital, part of the time with a limited restrictive clause and for much the greater portion of the time without any restriction, how may we estimate with any degree of certainty an alleged damage to its reputation or use as an inn when, as a matter of fact, it had never attained any reputation or been used as such? The company had no more than a pretentious building, inviting surroundings, and possibly a successful future. The value of its use as an inn was in the making. No clearer demonstration of this need be cited than the fact that the company itself granted an option of purchase for $888,000, a sum but little in excess of what it now demands as damages. That there may be a recoverable injury to the reversion by a tenant in possession under a written lease, is, of course, not controverted, but the present difficulty has to do with the measure of damages; nothing else.
The plaintiff uses the building as an inn, guests have been received and entertained, and there is nothing in the record to show that any have departed or others failed to come because of the previous use of the building as a hospital. As a matter of- fact, the plaintiff opened the inn on March 10, 1923, some three months after resuming possession of the same, and between that date and the 16th of the same month entertained a daily average of 90 people, there being 194 guests at one time quartered in'the inn. In the following month of April the North Carolina Medical Society was entertained at the inn, a notable incident, there being as high as 180 guests, probably doctors, registered in one day. While this was below the full capacity of the inn, it *174 is of probative value in disclosing a lack of the existence of a discreditable force, sufficient in extent to publicly condemn the inn for use as such. Indeed, it is not in anywise a discouraging showing for the beginning of the enterprise.
Of still greater significance, however, is the apparently indisputable fact that the defendant did not violate the lease. When the plaintiff sought to induce the defendant to lease the inn the restrictive clause proposed would have precluded the use of the same for the treating or housing of tubercular patients except in surgical cases. This clause, “ that no part of the property shall be used for the purpose of treating or housing any person suffering from tuberculosis in any form, or from smallpox or any other like contagious or obnoxious disease,” was, indeed, highly restrictive. Under its terms the excepted patients were excluded. The defendant was unwilling to assent to the restriction. It was known — experience had so demonstrated — that a patient might possibly obtain admission to the hospital apparently free from the excepted diseases and subsequently develop one of the banned' afflictions. In order to meet this emergency, and at the same time recognize as far as possible the desire of the plaintiff in this respect, the defendant changed this stipulation so as to read “that no part of the property shall be used for the purpose of receiving for treatment any person suffering,” etc. The plaintiff, as before observed, agreed to the substitution. Therefore the obligation arising out of this most significant clause extended no further than its expressed terms, not to receive for treatment patients falling without the restricted class. What do the words “ receiving for treatment ” mean ? It is not asserted that they import absolute exclusion. Their ordinary and usual meaning indicates a clear intent to impose upon the defendant the positive obligation to refrain from knowingly receiving a patient within the restricted class and thereafter treating him for the disease. In other words, in so far as it was possible, by every known medical means, the defendant would not receive for treatment a patient known at the time to fall within the restriction. Manifestly, though such a patient might be received temporarily he could not be immediately and ruth *175 lessly cast aside, and if immediately thereafter he was transferred to a regular tubercular hospital for treatment no promises were broken. As a matter of fact, that is precisely what happened. Of a total number of-119 patients on whose cards the word “tuberculosis” is written, 60 were found after observation and diagnosis to be free from the disease, some were received for operations, some were treated for concurrent diseases, and others were under observation. Not one of the total number was received or treated as a tubercular patient, and, when tuberculosis developed, in each instance as soon as it was practicable the patient was transferred to a tubercular hospital. The record unmistakably discloses that it was the purpose of the authorities in charge of the hospital to observe this restriction to its fullest extent.
A venereal ward was maintained in the hospital and patients were treated for venereal diseases. The facts appear in Finding VI. Typhoid patients were received and treated, and this is set forth in Finding VII. The restrictive clause is limited to the reception for treatment of any person suffering from tuberculosis, smallpox, or any like contagious or obnoxious disease. The expert medical testimony in the record removes these diseases from the category of “ like contagious and obnoxious disease.” Under the well-known rule of ejusdem generis they are not to be classified as germinating that degree of contagion and obnoxiousness inherently attached to tuberculosis and smallpox. In its popular sense a venereal disease is odious, but the parties to this demise were not so considering it. The premises demised were to be used as a hospital, an institution of disease, a scientific refuge for its treatment, and the plaintiff was intent on excluding tubercular patients, smallpox patients, and others of like affliction. Surely it was not within the contemplation of the parties that all contagious diseases should fall within the restriction. If so, under modern diagnosis and authority patients suffering from bad colds might be excluded.
Applying to this clause the ordinary rules of construction, it seems obvious that the intent of the parties was to limit the restriction to patients whose disease would fall within *176 the scope of contagion and objection attached to tuberculosis and smallpox. The weight of expert testimony in the record establishes this fact that the diseases complained of are not to be classified as such. The degree of danger from contagion is incomparable and the diseases themselves, while loathsome and repulsive, are not obnoxious in the technical sense nor to the same extent as tuberculosis and smallpox, which may spread by innocent contact and endanger an entii’e locality and its population.
The case, then, in whatever aspect it may be considered, seems devoid of merit. The petition will be dismissed, and it is so ordered.
Graham, Judge; Hat, Judge; DowNet, Judge; and Campbell, Ghief Justice, concur.