E. F. HAWTHORNE V. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHEROKEE.

No. 15,739. (99 Pac. 598.)

SYLLABUS BY THE COURT.

1. COUNTY HEALTH OFFICER—*Contagious or Infectious Diseases —Duties.* A health officer appointed by a county local board of health having knowledge of any infectious or contagious disease is required immediately to exercise and maintain supervision of such case, seeing that it is properly cared for and isolated.

2. —————— *Implied Authority to Contract for Medical Attendance and Nursing.* The performance of these duties involves expense, and the power to care for such diseased persons implies the authority to contract for medical attendance and nursing in an emergency which requires immediate action.

3. —————— *Order of County Board Not a Condition Precedent to Liability of County.* The county board has authority to examine and settle all accounts chargeable against the county, and to determine whether services which it is claimed were rendered by the order of the health officer were properly performed under his direction, and their reasonable value; it has the general control of the situation and of the expenditures, but in the circumstances disclosed in this case a previous employment by order of the board itself was not a condition precedent to the liability of the county.

Error from Cherokee district court; CORB A. MCNEILL, judge. Opinion filed January 12, 1909. Reversed.

*S. E. Cheeseman,* for plaintiff in error.

*E. B Morgan,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: The district court sustained a demurrer to plaintiff's petition, and she presents the record here to review that ruling. The petition alleges that the plaintiff was employed by the health officer of the defendant board to nurse several patients suffering from smallpox in a family which had been quarantined at their home near the city of Galena, by direction of the health officer, to prevent the spread of the disease; that the officer had found and decided that the persons so diseased needed immediate attention; that it would be an "act of inhumanity" to delay action until a meeting of the defendant board could be held; that the emergency required immediate action, and that therefore the health officer in pursuance of his authority to do so quarantined the family and employed the plaintiff to nurse such persons, which she did, as the defendant well knew; and that her services were reasonably worth the sum demanded—payment of which had been refused.

The demurrer was based on the ground that the petition did not state facts sufficient to constitute a cause of action; that it should have stated that the persons so treated were unable to pay therefor, that the county had no poor-farm, and that the defendant had promised to pay for the services. The statute provides:

"The county commissioners of the several counties of this state shall act as local boards of health for their respective counties. Each local board thus created shall elect a physician, preference being given to adepts in sanitary science, who shall be *ex officio* a member of said local board and the health officer of the same. He shall hold his office during the pleasure of the board, but may be removed for just cause at any regular meeting of the same by a majority of the members voting therefor, on which motion he shall not vote. The local boards of health hereby created shall not supersede or in any way interfere with such boards established by

municipal regulations in any of the counties of this. state; but all local boards of health of this state, created by this act, or existing by authority of municipal law, shall be governed by the provisions of this act." (Gen. Stat. 1901, § 6662.)

"Whenever any householder shall know that any of his family is sick with or has died of smallpox, cholera, scarlet fever, diphtheria, epidemic cerebro-spinal meningitis, or any disease dangerous to the public health, he shall immediately give notice thereof to the nearest board of health or health officer, and shall cause the house to be placarded as prescribed in section 1.

"Any municipal or county board of health or health officer having knowledge of any infectious or contagious disease, or of a death from such disease, within their jurisdiction, shall immediately exercise and maintain a supervision over such case or cases during their continuance, seeing that all such cases are properly cared for and that the provisions of this act as to isolation, restriction of communication, placarding, quarantine and disinfection are duly enforced.

"All persons sick with smallpox, cholera, scarlet fever, diphtheria, epidemic cerebro-spinal meningitis or any contagious or infectious diseases dangerous to the public health shall be thoroughly isolated from the public and properly quarantined." (Gen. Stat. 1901, §§ 3307-3309.)

These and other provisions designed to enforce the quarantine and to prevent the spread of contagion (Gen. Stat. 1901, §§ 3306, 3310, 3316, 6668) evince the legislative purpose to protect the health of the people through the prompt and vigorous action of the officers entrusted with these important duties. County commissioners are elected from the several districts of their counties, and some time is usually necessary in order to call and hold a meeting. If it should be held that formal action of the board is necessary in order to establish a quarantine, obtain medical attention, and perform the like duties required by the law in each particular case, the law might, and probably would, prove inadequate to secure the end manifestly intended. The law therefore devolves these administrative duties

upon the health officer, requiring him immediately to exercise and maintain a supervision over such case or cases, seeing that all such cases are properly cared for and isolated. The performance of these duties involves expense, and the power to care for such diseased persons implies the authority to contract for necessary medical attendance and nursing in an emergency requiring immediate action.

If it should be held that the financial inability of the persons under treatment to pay therefor is a condition precedent to the liability of the county for their care, it should also be held that the fact that the proper officer has made the examination and taken the action raises a presumption, at least, that they were so unable, for public officers are presumed to have properly performed their duties. Suppose, however, a person able to pay should refuse to take the precautions and observe the requirements of the law, although ordered by proper authority: is the health officer powerless to provide for the quarantine and the care necessary to prevent the spread of contagion? It may be that the persons benefited would be liable to refund to the county or city, as the case may be, the amount so expended. We do not decide this matter now, for such a case is not presented in this record.

It is said that we must presume that the county had a poor-farm, and that in such a case relief could not be given elsewhere. We can not presume, however, that the county had the necessary conveniences at such farm to isolate smallpox patients. On the other hand, we must presume that it had not, or that it was impracticable to use them in the emergency, because of the fact that the proper officer provided for quarantine and attendance elsewhere.

The defendant relies upon the opinion in *Smith v. Comm'rs of Shawnee Co.*, 21 Kan. 669, wherein it was held that a county maintaining a poorhouse was not liable for such services, but that decision was made

Hawthorne v. Cherokee County.

before the statutes above cited were enacted, and even then it was said in the opinion (p. 672) "that an enlightened liberality, as well as a cautious prudence, would justify the commissioners in making a reasonable appropriation for the services"—the services in that case having been rendered by a physician for a smallpox patient, upon the request of the township trustee.

The case of *Comm'rs of Neosho Co. v. Stoddart,* 13 Kan. 207, also relied upon by the defendant, held that the county was not liable for a carpet purchased by the sheriff, upon the order of the district court, for the court-room. That was one of the ordinary expenses of the county government and was within the exclusive control of the county board. Here the county board was acting as a local board of health, in conjunction with the health officer, who, as we have seen, was given certain designated powers necessarily involving expenditures for nursing. The county board has authority to examine and settle all accounts chargeable against the county, and so it had the authority to examine the plaintiff's claim to determine whether the services were properly rendered under competent authority, and their reasonable value. It had the general control of the situation and of the expenditures, but in the circumstances disclosed in the petition a previous employment by order of the board itself was not a condition precedent to its liability. In defining the duties and authority of health officers the supreme court of New Hampshire said:

"Having power to compel the confinement of infected persons and prevent their communication with others, and having exercised that power, it became their duty to provide for the wants of those confined there. They could not shut them out from communication with their friends and with the world, and deprive them of any means of obtaining assistance, and at the same time lawfully withhold necessary support and care. They could not establish a hospital without ordinary hospital

accommodations, and they could not make the hospital a place of involuntary confinement and escape the duty of supplying the reasonable wants of those who, by confinement and seclusion, were prevented from applying to any one else for relief. . . . The law does not require the performance of a duty and at the same time withhold the means reasonably necessary for its performance." (*Labrie v. Manchester*, 59 N. H. 120, 121, 122, 47 Am. Rep. 179.)

"The exigency of a pestilence will not wait for the convenience of parties, and measures must be prompt and effectual." (*Elliott v. Kalkaska Supervisors*, 58 Mich. 452, 453, 25 N. W. 461, 55 Am. Rep. 706.)

In Indiana the authority of the health officer in such circumstances was stated in the following language:

"Doctor Spaulding was qualified to act as health officer, and, acting upon the authority given him by the regularly appointed health officer, and upon instructions from the secretary of the state board of health, he did the only proper thing that could be done, and quarantined the house and placed guards around it to prevent ingress or egress into or from the premises. And his action thus far was afterward ratified by appellee when it paid the guards thus appointed for their services. And when he went one step further and did what the dictates of humanity and a proper regard for the safety of the public health would require in every such case, and employed a nurse to care for the patient, it is claimed there is no liability for such services because he was not authorized to contract for such employment. However, we think it may rightfully be said that the employment of a nurse to care for a person suffering from smallpox in a malignant form was an essential precautionary measure to prevent the spread of the disease, and that all that Doctor Spaulding did was one entire transaction, which appellee must repudiate or ratify as a whole." (*Monroe v. City of Bluffton*, 31 Ind. App. 269, 273, 67 N. E. 711.)

(To the same effect see *Town of Knightstown v. Homer*, 36 Ind. App. 139, 75 N. E. 13.) The authority of the local board of health under the Indiana law is no more explicit than under our own.

As the services were rendered to a family residing in a township and not in a city, the county board of health had jurisdiction, and the plaintiff's services were properly chargeable against the county. The petition stated a cause of action, and the demurrer should have been overruled.

The judgment is reversed and the case remanded for further proceedings in accordance with this opinion.