J. P. H. DYKES, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF STAFFORD, *Appellee*.

No. 17,484.

SYLLABUS BY THE COURT.

1. CONTAGIOUS DISEASES—*Services of Private Physician—Petition—Demurrer*.  The physician attending upon a family, several members of which were sick, believing the malady to be diphtheria, the health officer believing otherwise, called in consultation the plaintiff (the health officer being invited but failing to attend) who diagnosed the cases and found the patients suffering from diphtheria.  The plaintiff quarantined the family, administered antitoxin and gave general instructions for the treatment and isolation of the cases and of the family and for the protection of the public against the spread of the disease.  The county has a poor farm, but one with no facilities or conveniences for isolating or quarantining persons suffering from contagious or infectious diseases.  He presented his bill for $15, alleged to be a reasonable compensation, to the county board, who refused to pay.  *Held*, that as the pleading showed that the services were performed upon the request of the attending physician, who had no authority to bind the county, and failed to show refusal or inability on the

Dykes v. Stafford County.

part of the afflicted family to pay, a cause of action was not stated.

·2. OVERSEER OF POOR—*Mayor*—*Physician*—*Employment* — *Compensation*. A county having a poor farm with no facilities or conveniences for operating upon or caring for persons without friends or money, suffering from catalepsy, appendicitis or broken collar bone, is liable for the reasonable value of services and treatment afforded such persons, not inhabitants, upon the order of the mayor or the acting mayor of a city of the third class within such county.

3. ——— *Same*. Under section 5561 of the General Statutes of 1909, the mayor or acting mayor of a city of the third class is deemed to be an overseer of the poor, with power in cases of emergency to bind the county by granting or ordering such temporary relief for a person, not an inhabitant, lying sick, or in distress, without friends or money, as the nature of the case may require, the intention of the legislature and the duty of the county being to succor such afflicted sojourner rather than to delay action for the observance of formalities.

Appeal from Stafford district court. Opinion filed March 9, 1912. Affirmed as to the first cause of action and reversed as to the third, fourth and seventh causes of action.

*T. W. Moseley,* for the appellant.

*John S. Dawson,* attorney-general, and *Ray H. Beals,* county attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.: Dr. J. P. H. Dykes sued the board of county commissioners of Stafford county, and an objection to testimony was sustained as to the second, third, fourth and seventh causes of action, from which ruling he appeals. In the second it was alleged that Doctor Hart was health officer of the county, and was called on by another doctor to diagnose a case, and they disagreed. The other doctor called in the plaintiff for a consultation, which the health officer, though notified, did not attend. The plaintiff, like the other doctor, pronounced the case diphtheria, from which four chil-

dren in one family were suffering. He quarantined the family at their home, administered antitoxin, and gave general instructions for the treatment and isolation of the cases and of the family and for the protection of the public against the spread of the disease. It was further alleged that a reasonable and customary compensation for the services of the plaintiff is $15, which, on presentation to the board, was disallowed.

The third cause of action alleged that a young man named McFadden, a sojourner at St. John, not an inhabitant or resident of Stafford county, was found unconscious and without friends or money; that the mayor of the city examined into the case and found that McFadden was likely to suffer unless immediate action was taken, and that, under the direction of the mayor as overseer of the poor, and the county attorney, McFadden was ordered to be taken to the plaintiff's hospital at Stafford for treatment, there being no hospital at St. John and no place where the patient could be properly looked after; that McFadden was brought to the hospital and cared for, such care being reasonably worth $15, and the necessary expense 75 cents, the bill for $15.75 being approved by the mayor, and payment by the county board refused.

The fourth cause of action alleged that on verbal complaint to the acting mayor and overseer of the poor of the city of Stafford that a boy about sixteen years of age, not an inhabitant of the city or county of Stafford, was lying sick therein, without friends or money, and likely to suffer, the overseer examined into the case, and in writing authorized the plaintiff to take charge of the boy and provide him with the treatment which he should believe necessary to preserve life and health, and to present a reasonable bill to the county commissioners for his services; that upon receipt of such order the plaintiff examined the boy and found him suffering from appendicitis, had him removed to his hospital and successfully performed upon him an

operation which was immediately necessary, his life being in danger; that the boy remained in the hospital a week and six days, plaintiff attending upon him and furnishing his regularly employed nurses to attend him; that a reasonable compensation for the operation is $150 and for the hospital services $45, a bill for which amount was approved by the mayor and disallowed by the board; that it would have been an act of inhumanity to wait until the board could have been called to investigate the case and have it attended to.

The seventh cause of action alleged that, on complaint to the mayor of St. John that one R. L. Mills, not an inhabitant of the city or of the state, without friends or money, was suffering from a broken collar bone and liable to suffer if immediate care was not taken of him, the mayor investigated and found the complaint true and verbally ordered Mills to be taken to plaintiff's hospital for treatment, where he was taken, and the necessary operation performed and the fracture reduced; that a reasonable compensation for plaintiff's assistance in the operation is $10, and for the use of the operating room and attendance of the nurses $15, and for the care of the patient $10, amounting to $35, $15 of which was afterward paid by Mills; that a bill for the remaining $20 was approved by the mayor and presented to the board and disallowed. The petition also alleged that Stafford county has a poor farm, but with no facilities or conveniences for the isolation of persons who have contracted contagious and infectious diseases, no necessary conveniences or facilities for caring for and nursing persons suffering from certain diseases, and no operating room or facilities for performing the operations mentioned; that in each of the cases it would have been greatly dangerous to the public health or an act of inhumanity to wait until the board could have been called for the purpose of authorizing the services of a physician.

As to the second cause of action, no statute is pointed out directly fixing liability, but the case of *Hawthorne v. Cherokee County,* 79 Kan. 295, 99 Pac. 598, is referred to. It was there held that a health officer appointed by a county local board of health having knowledge of any infectious or contagious disease is required immediately to exercise and maintain supervision of such case and see that it is properly cared for and isolated; that the power to care for such diseased persons implies authority to contract for medical assistance and nursing in an emergency which requires immediate action, and that the county board has authority to examine and make reasonable allowance for such services. The plaintiff was employed by a health officer to nurse several smallpox patients in a family which had been quarantined by the direction of a health officer to prevent the spread of the disease. The officer found and decided that the persons needed immediate attention, and that it would be an act of inhumanity to delay action until a meeting of the board could be held. The trial court sustained a demurrer to the petition on the ground that it did not state a cause of action and should have stated that the persons were unable to pay; that the county had no poor farm, and that the defendant had promised to pay for the services. But it was held that it could not be presumed that the county had the necessary conveniences for isolating smallpox patients, even if it were presumed that it had a poor farm; that the county board had control over the ordinary expenses of the county and authority to examine and settle all accounts chargeable against it, and determine whether the services were properly rendered under competent authority, and their reasonable value; but that a previous employment by order of the board itself was not a condition precedent. The court quoted (79 Kan. 299) from *Smith v. Comm'rs of Shawnee Co.,* 21 Kan. 669:

"An enlightened liberality, as well as a cautious

prudence, would justify the commissioners in making a reasonable appropriation for the services." (p. 672.)

The statute (Gen. Stat. 1909, §§ 8074-8084) provides that whenever any physician shall know or have reason to believe that any person whom he is called to visit, or any person within his knowledge without the care of a physician, is sick with diphtheria, he shall immediately give notice to the nearest board of health or health officer, and if the case occurs in his own practice he shall at once placard the house; that any municipal or county board of health or health officer having knowledge of any infectious or contagious disease within his jurisdiction shall immediately exercise and maintain a supervision over such case during its continuance, seeing that it is properly cared for and that the provisions of the act as to isolation, restriction of communication, placarding, quarantining and disinfection are duly enforced. Such health officer is required to confer with the attending physician, and all persons sick with a contagious or infectious disease dangerous to the public health are to be properly isolated and properly quarantined. It is made the duty of every physician in attendance upon any person thus afflicted to notify the proper health officer when the premises are ready for disinfection, so that the same may be properly disinfected, under the direction of the health officer or some other person under his authority.

Section 4 of article 7 of the state constitution requires that "the respective counties of the state shall provide, as may be prescribed by law, for those inhabitants who by reason of age, infirmity or other misfortune may have claims upon the sympathy and aid of society." While the legislative department of the government is thus required by the primal and supreme authority of the people to provide for inhabitants, the lawmaking body has, with a commendable spirit of humanity, made it the duty of overseers of the poor, on complaint made by them "that any person not an in-

habitant of their township or city is lying sick therein, or in distress, without friends or money, so that he or she is likely to suffer, to examine into the case of such person, and grant such temporary relief as the nature of the same may require;  .  .  .  and the board of county commissioners of the proper county, at any meeting of such board, shall examine all claims arising under the provision of this section, and if found reasonable shall direct the same to be audited and paid out of the county treasury." (Gen. Stat. 1909, § 5561.) This provision was enacted in 1862, and in 1877 it was held, in *Comm'rs of Pottawatomie Co. v. Morrall*, 19 Kan. 141, that a physician and surgeon who furnished medical and surgical attendance to a person in distress, not an inhabitant of the township in which he was found lying sick, without friends or money, under the direction and employment of an overseer of the board of such township, was entitled to reasonable compensation for his services, and that upon refusal of the county board to pay, an appeal might be taken to the district court and payment enforced. It was there said (p. 143) that if the overseers of the poor are absolutely helpless, officially, to grant temporary relief in such cases, then they can only imitate the example of the Levite who passed by on the other side. In *Smith v. Comm'rs of Shawnee Co.*, 21 Kan. 669, while it was held that such service rendered to residents of the township did not render liable a county maintaining a poor house, under a strict construction of the statute, still in closing the opinion it was said:

"We can not forbear the remark that the circumstances were apparently such as ought, in the first instance, to have called for some provision by the county commissioners, and that an enlightened liberality, as well as a cautious prudence, would justify the commissioners in making a reasonable appropriation for the services and supplies, although rendered and furnished without their previous sanction and direction." (p. 672.)

In *Stevens v. Miami County*, 6 Kan. App. 438, 49 · Pac. 798, it was held that the discretion to determine whether or not a sick and indigent person, not an inhabitant, found within a county can be safely and properly sent to the county where his settlement exists rests with the township trustee as overseer of the poor, and when upon investigation and inquiry he determines that aid should be extended and orders it, the county is bound for services rendered upon such order. It was said that our poor laws are comprehensive and confer considerable authority and discretion upon the overseers of the poor. It was further said:

"The important fact is, that the trustee of Ten Mile township found her in his township, and it is very likely that she was then in such a condition that humane considerations influenced him to decide against her removal. The presumption that public officers perform their duties to the best of their abilities runs just as strongly in favor of a township trustee as in the case of a county commissioner." (p. 441.)

The allegations as to the second cause of action being taken as true, we have this situation: The local health officer did not believe the case was diphtheria but the attending physician did; the plaintiff, upon consultation, determined that it was. The plaintiff proceeded to do precisely what the law made it the duty of the health officer to do, by way of protecting the public from its spread. The plaintiff, not being a volunteer, but answering the call of the attending physician, acted promptly and properly, and in so far at least as his services tended to such protection a moral obligation exists for his reasonable compensation. However, it is not alleged that the family were unable or unwilling to pay for the services of the plaintiff; and not being called into the case by any one having authority to bind the county, it can not be said that the trial court erred in sustaining a demurrer to this cause of action, the county board having seen fit to refuse payment.

As to the remaining causes substantially the only defense made is that the order was not made by the mayor and council but by the mayor alone. It is true, as argued by the defendant, that the statute (Gen. Stat. 1909, § 5538) makes the mayor and council of the incorporated cities and township trustees of the several townships overseers of the poor, but section 5539 provides that "every mayor and council of the cities and trustee of the townships shall . . . be designated overseers of the poor," and common sense and common humanity dictate that this language shall be given a practical and workable construction. It does not accord with the promptings of humanity, expressed in the constitution and in the statutes and felt by the citizens of this state, to hold that before an emergency case can be cared for a meeting of the mayor and council must be called and action taken by the joint body. In actual practice the mayor acts as overseer of the poor, and has for time out of mind. The language of section 5561 is referred to:

"It shall be the duty of the overseers of the poor, on complaint made to them . . . to . . . grant such temporary relief as the nature of the same may require."

This applies to all overseers, city and township, and does not compel a holding that in a city only the mayor and council together can act. Section 5557 provides:

"The overseers of the poor in each township and city in the state shall be entitled to receive, each, three dollars per day for each and every day during which they shall be necessarily employed in the discharge of their several duties."

Without deciding whether the mayor and council acting as one body are entitled to one per diem for time devoted to their duty as overseer, or to three dollars a day for each member when actually performing such duty, we are constrained to hold that in the cases

45—86 KAN.

under consideration the mayor in the two instances and the acting mayor in the other acted lawfully as overseers of the poor, and that the orders given were binding on the county, entitling the plaintiff to a reasonable compensation.

The important underlying principle is that the duty rests upon the county to provide for just such cases. While the preliminary complaints and orders are made a proper basis for the allowance of expense, it was not intended and should not be held that the accomplishment of the main object is to be frustrated by the mere failure to comply technically with some preliminary line of procedure. The appellate court of Illinois held that a physician rendering medical aid to persons injured by an explosion, the emergency being such as to warrant immediate action, could recover from the county board without showing a previous request or authority. (*County of Madison v. Haskell*, 63 Ill. App. 657.) It was contended that as no authority was received from the overseer of the poor no recovery could be had, but it was shown that the overseer was absent from the state, that the relief furnished by the physician was to persons burned in a railroad collision between a passenger train and a freight train carrying tanks of oil and gasoline which were ignited. The court said:

"These people were entitled to medical aid, if it could be had, on the instant and at the county's expense." (p. 661.)

In *Robbins v. Town of Homer*, 95 Minn. 201, 103 N. W. 1023, a surgeon who relieved a pauper suffering from an accident which required immediate attention was permitted to recover from the town, although not previously requested to furnish such relief. It was held that under such circumstances of urgent necessity, that humanity and decency admitted of no delay, the law should imply a promise to pay without proof of such

promise when there was an expectation of reimbursement, analogously to the line of decisions holding that one who furnishes means of burial may recover although no request comes from the person legally liable. It was said:

"The duty to provide for the poor thus imposed by statute was undoubtedly intended to regulate the obligation, rather than to permit an evasion of it." (p. 204.)

In *Commissioners v. Denebrink*, 15 Wyo. 342, 89 Pac. 7, 9 L. R. A., n. s., 1234, the supreme court of Wyoming decided that notwithstanding the statute required commissioners to furnish aid in certain cases "upon notice thereof," the county was liable for medical attention rendered when immediate aid was necessary to save the life and at a time when the commissioners were not in session.

"The notice contemplated is not for the purpose of fixing the liability of the county  .  .  .  but to enable the commissioners to render prompt assistance in deserving cases." (p. 348.)

The legislature, in making provision for aiding afflicted sojourners knew, as all practical persons know, that in cases of emergency celerity rather than formality of action is essential, else while adjusting and applying the ordinary red tape the death of the patient may end the need for human succor.

The order sustaining the objection to testimony under the third, fourth and seventh causes of action is reversed and the cause remanded for further proceedings.