No. 23,581.

CHARLES CATON and WILLIAM STARR, Copartners doing business as CATON & STARR, *Appellants,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OSBORNE, *Appellees.*

SYLLABUS BY THE COURT.

AFFLICTED INDIGENT PERSONS—*In Need of Emergency Surgical Treatment— Duty of Overseer of Poor.* Notwithstanding the provisions made for surgical operations and hospital treatment of the children of indigent persons afflicted with certain deformities and maladies, at the state hospital conducted by the regents of the University, it is still the duty of the overseer of the poor in cases of emergency to promptly provide proper medical or surgical treatment for children of the poor where the lack of emergency relief is likely to result in the loss of life or other serious consequence.

Appeal from Osborne district court; WILLIAM R. MITCHELL, judge. Opinion filed March 11, 1922. Reversed.

*N. C. Else,* and *J. F. Tillman,* both of Osborne, for the appellants.
*Omar D. Gregory,* county attorney, for the appellees; *H. McCaslin,* of Osborne, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: This case involves the question whether a ·county is liable for the cost of an emergency operation performed upon an indigent person at the instance of the overseer of the poor without the order or consent of the commissioners of the county.

It appears that the mayor of the city of Osborne, a physician and the overseer of the poor for the city, found Grace Smith, the child of an indigent person suffering from a mastoid ailment, and that to save her life an immediate operation was necessary. There was no poorhouse or hospital in the county nor any surgeons capable of per-

forming such an operation, and the overseer of the poor therefore sent her to Concordia where a successful operation was performed. When the bill for the operation and hospital care was presented to the county commissioners, it was rejected. The action was then brought and the trial court held upon a demurrer to the answer in which the foregoing facts were set forth, that the county was not bound for the expense of the operation or the necessary hospital charges. From this decision plaintiffs appeal.

It is conceded that under the general provisions of the statutes the overseer of the poor in each township and city have the oversight and care of all poor persons in their township or city so long as they remain county charges, and to see that they are properly relieved and cared for, and further, that it is the duty of the county commissioners to raise money for their relief and support. (Gen. Stat. 1915, §§ 6817-6822.) It is further conceded that the county would be bound for the cost of the expense and treatment of Grace Smith under the statutory provisions mentioned if a later enactment (Laws 1911, ch. 292, 293, Gen. Stat. 1915, §§ 6878-6890) does not modify the previous sections and divest the overseer of the poor of authority to bind the county for the surgical operation or hospital treatment and place the control and determination of the necessity for such operations or treatment in the county board of health, consisting of the board of county commissioners and the county health officer. The later statute supplements but does not repeal the earlier one prescribing the duties of the overseer of the poor. It provides in effect that if the physician in attendance upon any child of an indigent poor person finds that he is afflicted with a deformity or malady that may be cured by surgical operation or hospital treatment, he shall immediately report the same in writing to the board of county commissioners and county health officer, together with a statement concerning the malady or deformity with which such child is afflicted and his opinion as to whether or not the malady or deformity can be cured by operation or hospital treatment. Upon. such notice the county board of health is required to provide transportation for such child to the hospital conducted by the regents of the University of Kansas. There it is made the duty of the medical department of the university to provide accommodations for such child at the hospital and to designate a physician or surgeon to treat or operate upon the child, and that no compensation other than the salary received from the regents shall be charged or allowed to the

physician, surgeon or nurse who shall treat the child. The officers of the hospital are required to keep an accurate account of the medicines and nursing furnished, and file the same with the purchasing agent of the university as well as for the return transportation of the child, and the agent of the university is thereupon authorized to draw a duly verified voucher for the amount of the expense and forward the same to the authorities of the city or county from which the indigent person came, whose duty it is to audit and allow it, and the amount paid goes to reimburse the fund drawn upon for these expenditures.

The question arises whether this later statute modifies the former and takes from the overseer the power to make temporary provision for emergency cases, and whether persons in the situation of Grace Smith may be considered to be within the terms of the later act that persons afflicted with a deformity or malady shall be sent to the hospital of the university.

While the act of 1911 provides for surgical operations upon and hospital treatment for children of the poor, afflicted with deformities or maladies that may be cured by such operations and treatment, it was evidently intended to apply to afflictions which progress slowly or were of a chronic character which could without great risk await the calling together of the board of county commissioners and transportation of the sufferers hundreds of miles across the state to the university hospital. Emergency cases like the one we are considering were manifestly not intended to be included in that act nor was it intended that relief should be withheld by the overseer of the poor until action was taken by the board of county commissioners. Before relief under that act can be provided the physicians must report the affliction to the commissioners who reside in different parts of the county, and who can only be assembled at a special meeting by a call signed by two members of the board. The making of the report, the giving of notice of a special meeting of the commissioners which would give them time and opportunity to come from remote parts of the county to attend the meeting and the following inquiry and determination, would all consume considerable time. In view of the humane considerations which prompted enactments for the relief of the poor it is inconceivable that the legislature intended that afflicted children of the poor who required immediate medical or surgical treatment and whose lives would be lost for the lack of it, should be given no treatment or relief until the slow-moving ma-

chinery of the county board should be set in motion, and that tribunal should legally convene to determine the necessity for sending the child to the university hospital, and until it was transported there. Other provisions of the law make it the duty of the overseer to care for the poor, and to see that they are given relief, and it is made the duty of the board of county commissioners to raise money and pay for such care and relief. (Gen. Stat. 1915, §§ 6820, 6822, 6851.) The constitution enjoins this care and commands that counties of the state shall provide for the poor and those who have claims upon the sympathy and aid of society. (Art. 7, § 4.) When an overseer of the poor finds a poor person in need of care, it is his duty to furnish him prompt and proper relief. If the afflicted one is seized with a malady or has sustained an injury likely to terminate in death unless immediate medical or surgical attention is given, he would be grossly negligent if he did not promptly furnish it. In any event the duties imposed on the overseer would not end until charge of the afflicted ones had been taken by the board of county commissioners. Even if the child of an indigent person was suffering from a deformity or malady such as would bring it within the act of 1911 and, while awaiting the action of the board of commissioners, was seized with appendicitis, diphtheria or had a mastoid attack like that with which Grace Smith was suffering and which was likely to end in death if an operation was not immediately performed or special medical treatment given, it would be a gross dereliction of duty on the part of the overseer if he did not promptly provide for such an emergency and furnish proper care and relief. It has been held that it is the duty of the overseer of the poor to furnish emergency relief to indigent persons not inhabitants of the county who are found within it, suffering from disease or injuries, and if relief is granted in such an emergency, the county is bound to pay for it, it being the manifest intention of the legislature that such relief should be furnished promptly and should not be delayed for the observance of mere formalities. (*Dykes v. Stafford County*, 86 Kan. 697, 121 Pac. 1112.) Surely, inhabitants of the county who need emergency relief are entitled to as much consideration as nonresidents, and we conclude that the provisions made in the act of 1911 were not intended and do not have the effect to preclude the giving of such relief.

The judgment of the trial court is reversed and the cause remanded for further proceedings.