COMMERCIAL NATIONAL BANK OF COLUMBUS, APPELLEE, V. S. D. RUFF ET AL., APPELLANTS: JOHN C. BYRNES ET AL., APPELLEES.

FILED MAY 15, 1923. No. 22308.

1. **Appeal: CONFLICTING EVIDENCE.** Where a jury is waived and the witnesses in respect of material issues are orally examined before the court, and where in such case the evidence is conflicting, and the case is appealed, we are not unmindful of the fact that the trial court had a better opportunity to judge of the truth or the falsity of the statements of the witnesses than a reviewing court can have from a printed record.

2. **Record** examined, and *held* that the judgment is without prejudicial error.

APPEAL from the district court for Dodge county: FREDERICK W. BUTTON, JUDGE. *Affirmed.*

*J. J. Gleeson* and *Dolezal, Spear & Mapes,* for appellants.

*Albert & Wagner* and *Cain & Johnson,* contra.

Heard before MORRISSEY, C. J., LETTON, ROSE and DEAN, JJ., BEGLEY, District Judge.

DEAN, J.

Defendants, who are husband and wife, executed and delivered to John C. Byrnes, September 8, 1919, a promissory note in the sum of $2,000, and November 1, 1919, they executed and delivered to Byrnes another promissory note for $1,500; Mr. Ruff signing both notes as surety. The notes were made payable to Byrnes' order; the latter note, however, was payable at the plaintiff bank. Both notes were given as a first payment on the purchase price of a farm in Boone county and are in the usual negotiable instrument form and drawing 7 per cent. annual interest. March 1, 1920, the notes matured. Plaintiff alleged, in the usual form, that it bought the notes from Byrnes for a valuable consideration in the usual course of business and without knowledge of infirmities or of any defenses claimed by the makers. John C. Byrnes and C. A. Miller, his alleged partner, were made parties defendant on the defendants' application. In their amended answer and cross-petition the Ruffs admitted the execution and delivery of the notes, but alleged that they were obtained by fraud and misrepresentation practiced upon them by Byrnes and Miller, with the bank's connivance, and prayed that the notes be held for naught. A jury was waived. When the parties rested the court took the case under advisement and thereafter rendered judgment in favor of plaintiff and against S. D. Ruff and Elizabeth Ruff for $4,053.13, the full amount represented by the notes. The court further found generally in favor of defendants

John C. Byrnes and C. A. Miller, as against defendants S. D. Ruff and Elizabeth Ruff, and decreed that their cross-petition be dismissed. From the foregoing judgment defendants Ruff appealed.

In defendants' "substitute answer and cross-petition" they renewed the allegations of the former answers as against the bank. With respect to the cross-defendants, Byrnes and Miller, they alleged generally that they conspired together for the purpose of cheating and defrauding them; that a contract of purchase was entered into September 8, 1919, between Byrnes as seller and Mrs. Elizabeth Ruff as buyer of the Boone county farm, and that by its terms Mrs. Ruff agreed to pay $51,842.50 for the farm, the notes in controversy representing the first payment, the contract providing for subsequent payments which were to be secured by a mortgage on the land; the purchaser, however, by the terms of the contract, reserving to herself the privilege of paying all or any part of the purchase price March 1, 1920.

However, it is alleged by the Ruffs that it was orally agreed between them and Byrnes, the latter being represented by Miller, that the notes in suit should be retained in Byrnes' possession until Mrs. Ruff could sell her Dodge county farm, or otherwise raise the money, and that if she could not sell the farm or raise the money some other way the notes and the contract should be returned to her; that they relied upon the promises and representations so made and would not have delivered the notes but for the aforesaid verbal agreement; that about October 15, 1919, Mrs. Ruff being unable to sell her farm in Dodge county demanded a return of the notes and notified Byrnes and Miller that she, Mrs. Ruff, would proceed no further in the enterprise and that they were at liberty to sell the real estate in question to other parties. It is charged that neither Byrnes nor Miller ever intended to carry out their agreement but that the transaction was a scheme on their part to cheat and defraud the Ruffs of their money. It is not alleged that the land purchased

by defendants was of less value than that represented by the sellers at the time.

In their answer to the cross-petition of the defendants Ruff, both Byrnes and Miller denied all of the material allegations therein, and alleged that defendant Byrnes, "ever since the execution of the said contract, has been and still is able, ready and willing to keep and perform all and singular of the terms and conditions thereof on his part to be kept and performed, and has kept and performed the same in all respects, so far as thereunto permitted by said cross-petitioner, Elizabeth Ruff."

In support of the allegations of their cross-petition both Mr. and Mrs. Ruff testified that the oral agreement was made. This was denied by both Byrnes and Miller. Besides, it was shown that the Ruffs paid the interest on one of the notes and renewed it. So that their conduct is shown to be inconsistent with their plea that the notes were delivered conditionally to Miller for Byrnes. At best they are mistaken in their contention.

It plainly appears that Byrnes was able, willing and ready to perform his part of the contract. He tendered a valid deed in court, but the offer was refused. The tender, however, was not incumbent on him in view of the refusal of his adversary to comply with the conditions of the contract on her part to be performed. The defendants Ruff did not offer to perform their part of the contract which they entered into and which they themselves pleaded as an exhibit. Under the facts before us they cannot now be heard to say that plaintiff was in default.

That the plaintiff bank purchased the notes without knowledge of any infirmities therein and without knowledge of any defenses by the makers appears from the evidence. The president of the bank testified that he bought them from Mr. Byrnes on behalf of the bank, and that he had not heard of the claim, since made by defendants, that Mr. Byrnes would hold the notes until the makers disposed of certain land owned by them, and that he had

no knowledge that Mr. or Mrs. Ruff claimed any defense against the notes. He further testified that when the notes were purchased he, as was his custom, asked Mr. Byrnes about the responsibility of the makers and was informed that they had a farm near North Bend.

Where a jury is waived and the witnesses in respect of material issues are orally examined before the court, and where in such case the evidence is conflicting, and the case is appealed, we are not unmindful of the fact that the trial court had a better opportunity to judge of the truth or the falsity of the statements of the witnesses than a reviewing court can have from a printed record.

Other assignments of alleged error are urged by counsel, but upon examination we find that prejudicial error does not appear.

The judgment is

AFFIRMED.