A. L. MILLER, APPELLEE, V. BANNER COUNTY, APPELLANT.*

FILED OCTOBER 9, 1934. No. 28918.

*William H. Heiss*, for appellant.

*Roland V. Rodman* and *John H. Kuns, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and YEAGER, District Judge.

EBERLY, J.

This proceeding against Banner county is a prosecution

*See former opinion, *ante*, p. 1.

.of a claim for services as physician and surgeon performed by plaintiff and appellee for one Clarence Hooley, alleged to be a pauper. This claim was originally filed with the board of county commissioners of Banner county. It was rejected by them and the claimant appealed to the district court for Banner county. Here a jury was waived, and, in a trial to the court, evidence was introduced, on consideration of which findings and judgment for plaintiff were entered. From this determination, and the order of the trial court overruling its motion for a new trial, Banner county appeals.

This record thus presented on appeal involved the application of two principles of procedure long adhered to in this jurisdiction, viz.: "In a case tried to the court, the presumption obtains that the court, in arriving at a decision, will consider such evidence only as is competent and relevant, and this court will not reverse a' case so tried because other evidence was admitted." *Citizens Ins. Co. v. Herpolsheimer,* 77 Neb. 232. And, also, "The findings of a court in a case tried to the court without the intervention of a jury are entitled to the same weight as the verdict of a jury, and will not be set aside when there is evidence to support them." *Citizens Ins. Co. v. Herpolsheimer, supra.* See, also, *Callahan v. Callahan,* 7 Neb. 38; *Faulkner v. Simms,* 68 Neb. 299; *Commercial Nat. Bank v. Ruff,* 110 Neb. 302; *Bodge v. Skinner Packing Co.,* 118 Neb. 179.

At the time of the trial Clarence Hooley was 19 years of age. His father was dead. Some time after his father's death, his mother married a man by the name of Murphy, who, in 1929, deserted her and his whereabouts thereafter are unknown. In 1930, after the desertion of the mother by Murphy, the mother and her family, of which Clarence was a member, were residing in Gering, Nebraska. In October of that year the entire family embarked in a Ford automobile and started for Oregon, intending to there establish their new home. They proceeded as far as Cheyenne, Wyoming, and then turned back by reason of a

storm. Mrs. Hooley and her family then stopped in Kimball, Nebraska, and afterwards they started north and had reached Banner county when a storm again overtook them. The family, including Clarence, sought refuge in an abandoned sod house. Later the owner thereof, in a spirit of charity, gave them permission to live in this sod house without paying rent.

The family continued to occupy this place as their home until in April, 1932. After the family settled down in Banner county in 1930 they worked at husking corn for various neighbors, and at other farm employment, and thus managed to support themselves until about Christmas time. After Christmas the family were in regular course given county aid through commissioner Blake of Banner county. The family appeared to be able to support themselves during the summer, when there was work, but during the winter months it was necessary for them to receive aid, which Banner county supplied.

During this time Clarence Hooley worked at various places. He brought his wages home to the family, deducting only enough for necessary expenses, and he stayed at home when he was out of work. Commissioner Blake interested himself in the family, and personally took Clarence out in 1932 to secure employment. Later the boy got a job with one George Everson for a salary of $5 a month and his board and room.

It appears reflected in the evidence that the Hooley or Murphy family had neither credit nor means during the time they lived in Banner county, and each winter the county furnished the family with aid. When a sister of Clarence Hooley became ill in the winter of 1932 the county of Banner furnished medical aid for her. During the period that followed the occupancy of the abandoned sod house by the family, Clarence worked intermittently wherever employment was available; sometimes for wages, and sometimes for board and lodging. He returned home during seasons of nonemployment.

It also appears that Clarence Hooley had several at-

tacks of appendicitis, the first of which occurred when he was working for commissioner Blake of Banner county. On this occasion Mr. Blake brought him back to the family home where he remained until he had recovered. The second attack occurred in the spring of 1932, and he was taken by Mr. Everson, his employer, to the office of Dr. A. L. Miller, claimant, in Kimball, Nebraska, on April 1, 1932. The doctor examined him and diagnosed his ailment as appendicitis, and then called up county commissioner Blake regarding the matter. The evidence of the doctor is that commissioner Blake replied that "he knew the boy;" that "the county had been taking care of the family;" and that "he was only one of the commissioners, but if the boy needed attention he would have to be taken care of."

The case turned to the worse, and in the early morning of the following day Clarence was again brought to Dr. Miller, and placed in the hospital at Kimball. At that time the boy had developed a ruptured appendix and an immediate operation was an absolute necessity. The following conversation then occurred between Dr. Miller and commissioner Blake:

"Q. And where did that conversation take place? A. In my office. I called him on the telephone, both him and Mr. Johnson (another county commissioner of Banner county). Q. And what was your conversation with Mr. Blake at that time? A. I told him the boy was brought back to the hospital, * * * and he had a ruptured appendix; he was very ill and he would have to be operated on. Mr. Blake said, 'He has to be taken care of; you go ahead and take care of him the best you can.' I told him he was the county commissioner up there and I felt the boy lived in Banner county, it was their charge and that the hospital and doctor wasn't able to carry the entire load. I was expecting to operate on him and send them the bill."

The doctor also called county commissioner Johnson, and the following conversation took place:

"Q. And what course of action—you mentioned about calling Mr. Johnson, the county commissioner? A. **Yes, sir.** Q. What was your conversation with him? A. I told him about the boy being in on the day before and he was brought back this morning; that he converse with Mr. Blake and I wanted the county to O. K. the bill. He said, 'Well, he is over in Blake's neighborhood,' and he thought maybe the boy could pay his own bill. Before we operate on him, I would have to wait until the commissioners met. And I told him that somebody would be paying for a funeral bill at that time, if you are going to wait for the commissioners to meet, the boy would be dead, and I would operate on him and give him the necessary medical attention."

While the boy was in the hospital the Hooley family moved to Kimball county with commissioner Blake's assistance. Further, it may be said that at this time, in addition to necessary clothing, the possessions of Clarence Hooley amounted to the sum of $3.10.

Thereupon Dr. Miller removed the ruptured appendix and thereafter cared for Clarence with such success that he fully recovered. Then the doctor submitted his itemized bill for these services performed as a claim against Banner county. This bill recited:

"Kimball, Nebraska. April 19, 1932. The county of Banner, to Kimball Hospital and A. L. Miller, M. D. Dr. To care of Clarence Hooley and Board of Health. April 2, 1932 to April 18—16 days hospital at $4.50—$72; operating room—$10; anesthetic and dressings—$15; Dr. Miller's fee for operation—$75 (this is one-half the usual fee)."

This claim the board rejected, and the district court allowed.

In the present instance we have a case of an emergency, where an immediate operation was necessary for the saving of human life. No county physician appears in the picture, and the county board has wholly failed to provide the essentials of the necessary care that common humanity

requires. Obviously, under these circumstances, the rule our statutory provisions imply and the history of poor relief in all jurisdictions sustains governs, viz., that in cases of emergency a physician should, if reasonably possible, attempt to communicate with the proper corporate authorities charged with the care of the poor, but if an arbitrary refusal is given, or if such corporate authorities be noncommittal, the necessary services may be rendered notwithstanding, and the law imposes an obligation upon the county to pay the reasonable value of such services. *Newcomer v. Jefferson Township,* 181 Ind. 1; *County of Christian v. Rockwell,* 25 Ill. App. 20; *Dykes v. Stafford County,* 86 Kan. 697; *Robbins v. Town of Homer,* 95 Minn. 201; *Board of Supervisors v. Gilbert,* 70 Miss. 791; *Trustees of Cincinnati Township v. Ogden,* 5 Ohio, 23; *Eckman v. Township of Brady,* 81 Mich. 70; 48 C. J. 537, 539.

In the present case it is no objection that the services were rendered in the adjoining county of Kimball. *Randolph v. Town of Greenwood,* 122 Ill. App. 23; *Rock Island County v. Arp,* 118 Ill. App. 521.

The only real questions presented by this record are: (1) Was Clarence Hooley a pauper? (2) Did he have a settlement as such in Banner county?

The rule of the common law of England is laid down by Blackstone as follows: "In legitimate children, though the place of birth be *prima facie* the settlement, yet it is not conclusively so; for there are settlements by parentage, being the settlement of one's father or mother." 1 Cooley's Blackstone (3d ed.) 361.

So, the rule appears generally accepted that an unemancipated child whose father is dead takes the settlement of the mother by derivation. 48 C. J. 485; *Bozrah v. Stonington,* 4 Conn. 373; *Torrington v. Norwich,* 21 Conn. 543; *Treasurer & Receiver General v. City of Boston,* 255 Mass. 499; *Stillwell v. Kennedy,* 5 N. Y. Supp. 407; *Burrell Township v. Pittsburg Guardians of the Poor,* 62 Pa. St. 472; *Bethel v. Tunbridge,* 13 Vt. 445.

The authorities also sustain the principle that the absence of Clarence Hooley from home, as required by his work, was wholly ineffectual to affect his "settlement," as that term is employed in the poor laws, and it continued as a member of his mother's family in Banner county.

It can hardly be contended that Clarence Hooley, in view of his entire history, when suffering from this attack of appendicitis, was not a "pauper" within the meaning of the poor laws of our state. This term may be defined as follows: A pauper is a person who shall be unable to earn a livelihood in consequence of any bodily infirmity, who is without means, and who is without kindred of sufficient ability to support him.

In other words, we are satisfied, in view of the findings of the trial court, that the present case was one of emergency, and that Clarence Hooley was a pauper having his settlement in Banner county.

The judgment of the trial court allowing the claim in suit is therefore correct, and the same is

AFFIRMED.