WHITLATCH CLINIC AND HOSPITAL, INC. OF MILAN *v.* CARPENTER, TRUSTEE, ET AL.

[No. 16,190. Filed February 13, 1940.]

*Charles A. Lowe* and *Robert A. Ritzmann,* for appellant.

*Lee J. Ricketts,* for appellees.

DeVoss, C. J.—Appellant filed its complaint in one paragraph against appellees Wm. M. Carpenter, Trustee of Randolph Civil Township, Ohio County, Indiana, and Randolph Civil Township, Ohio County, Indiana, to recover for medical services and attention rendered to Ernest Casteltine and Glenn Goodpasture, paupers, who were found injured upon the public highway of Randolph Township, Ohio County, Indiana.

Appellees filed their demurrer to the complaint, asserting therein that the complaint did not state facts sufficient to constitute a cause of action against ap-

pellees. The court sustained the demurrer, and upon appellant's refusal to plead further, rendered judgment that appellant take nothing by its complaint and that appellees recover costs. Appellant duly perfected its appeal to this court, and assigns as error that the trial court erred in sustaining the demurrer of appellees to appellant's complaint.

The complaint alleges generally that plaintiff is a corporation, operating a clinic and hospital in Milan, Ripley County, Indiana, and that Wm. M. Carpenter was the Trustee of Randolph Township, Ohio County, Indiana; that on the 27th day of March, 1937, Ernest Casteltine and Glenn Goodpasture, while traveling by motorcycle on the public highway, within the territorial boundaries of Randolph Township, Ohio County, Indiana, were involved in an accident and sustained severe injuries thereby; that they were rendered unconscious and were unable to care for themselves thereby and that they were removed to the hospital of plaintiff on said day immediately following the accident; that medical and surgical treatment was administered to said boys but that one of them died from said injuries within a few hours after reaching said hospital; that the other one remained in an unconscious condition for 22 days in said hospital, and that during all of that time plaintiff furnished medical and surgical services together with the services of a special nurse, and that such services, care, attention and drugs were necessary to save the life of said Goodpasture. That said boys by reason of their condition were unable to communicate with friends or relatives and that plaintiff endeavored to communicate with the defendant Trustee but was unable to do so. That the condition of said boys was such as required the surgical and medical attention to save their lives and that the life of said Goodpasture was so saved.

That said Casteltine and Goodpasture at the time of the accident and at the time of entrance into the hospital were without money, means or property; that immediately following the reception of said boys at plaintiff hospital, plaintiff notified defendant Trustee of the circumstances and death of said Casteltine and that the condition of Goodpasture required constant medical attention, nursing and medicine, but that said Trustee ignored the communication and refused to provide any medical attention for either of said boys; that notwithstanding such refusal plaintiff continued to treat said Goodpasture until the 22nd day of April, when he was removed from said hospital in an unconscious condition.

That at the time said boys were brought to the hospital, after an examination, plaintiff knew that to save the life of either of said boys it was necessary to render prompt medical assistance and that such services were so rendered; that at said time plaintiff knew said boys were paupers, but believing Randolph Township was liable therefor, rendered the services under the emergency existing upon the credit of said Township, and that upon demand for payment for such services has been refused by said Township.

Appellees contend that the laws of the State of Indiana do not provide for a recovery under the facts stated in the complaint. That the complaint does not allege any complaint was made to the Trustee relative to the needs of the boys named in the complaint; that the complaint does not state the boys had a legal settlement in Randolph Township, and that the statute for relief of the poor pertains to residents of the township only, and that the services were not rendered in said Randolph Township, and that the Township Trustee could not authorize medical treatment for paupers having no legal settlement in his township,

and that no services were authorized by the Township Trustee to be rendered.

It is provided by statute that the township trustees of the several townships of this State shall be ex officio the overseers of the poor within their respective townships and shall perform all duties with reference to the poor of their respective townships that may be prescribed by law. §52-144 Burns Ind. Statutes Ann. 1933.

The sections of the statutes, the interpretation of which is involved in this appeal, so far as necessary for consideration are as follows:

> "Whenever an overseer shall ascertain by investigation that any poor person or persons or family require assistance, he shall furnish to them such temporary aid as may be necessary for the relief of immediate and pressing suffering; before any further final or permanent relief in any case is given, the overseer shall consider whether distress can be relieved by other means than an expenditure of township funds. §52-150 Burns Ind. Statutes Ann. 1933.
>
> "Before any overseer of the poor shall give aid to any able-bodied person who is not a resident of the township where he is found, the overseer of the poor shall endeavor to provide some form of manual labor at which he shall set such able-bodied nonresident who may apply for relief to such overseer of the poor. If such nonresident shall be a child, or the mother of children requiring her care, or sick, or aged, or *injured*, or crippled, or physically or mentally unable to work or travel, such aid shall be furnished by the overseer of the poor of the township in which such nonresident is found until such nonresident can be returned to the place of his legal settlement, if such legal settlement can be determined. Any person who has applied to the township overseer of the poor for relief, or who is in need of relief and who does not have legal settlement in the

township, or who obtains any free medical aid or hospitalization or public institutional care or assistance at public expense in whole or in part, may be returned by the overseer to the place of his legal settlement, if such place can be determined; and the record thereof and the bill therefor shall be filed and paid in the manner provided for the filing and payment of bills for other kinds of relief by the overseer of the poor, and such bills shall be paid from any fund for providing and furnishing relief to the poor by the overseer of the poor . . . ." §52-156 Burns Ind. Statutes Ann. 1933.

"If anyone within the description of the poor person specified in this act shall be found in any township and the overseer of the poor of such township shall be unable to ascertain and establish the place of legal settlement of such person, he shall proceed to provide for such poor person in the same manner as other persons are hereby directed to be provided for." §52-161 Burns Ind. Statutes Ann. 1933.

"It shall be the duty of the overseer of the poor, on complaint made to him that any person within his township is lying sick therein or in distress, without friends or money, so that he or she is likely to suffer, to examine into the case of said person and grant such temporary relief as may be required. And if any person shall die in any township who shall not leave money or other means necessary to defray his or her funeral expenses, it shall be the duty of the overseer of the poor of such township to provide some person to provide for and superintend the burial of such deceased person, the necessary and reasonable expenses whereof shall be paid by the county auditor upon the order of such overseer, as are other claims for providing and furnishing poor relief to poor persons as herein provided." §52-162 Burns Ind. Statutes Ann. 1933.

From a reading of the above it is apparent that the legislature had in mind not only the relief of persons who were domiciled in the township as residents thereof, but contemplated the relief of all poor, injured and sick persons regardless of their place of residence. The general purpose of such legislation is humanitarian and is consistent with the broad view of civilization generally. The township trustee is, under the law, an instrumentality of government, and the furnishing of aid to the poor and needy is a governmental function, for which taxes are levied and collected.

Under the allegations of the complaint these two unfortunate boys were injured in Randolph Township and were rendered unconscious by such injury. Assume that the result of the accident had not been so critical and that it resulted only in leaving them crippled or injured and physically unable to work or travel. Under §52-156 Burns Ind. Statutes Ann. 1933, supra, they, without question, would have been entitled to relief under that part of said section providing: "If such nonresident shall be a child ... or sick, or aged, or *injured, or crippled,* or physically or mentally *unable to work or travel,* such aid *shall* be furnished by the overseer of the poor of the township in which such nonresident is found until such nonresident can be returned to the place of his legal settlement . . . ."

Under those conditions the Trustee of Randolph Township, under the law, would be charged with granting aid, not only temporarily, but until they could have been returned to the place of their legal settlement.

Appellees contend that under the allegations of the complaint no services were rendered by appellant in Randolph Township, and further state that the legal

settlement of the injured parties was in Dearborn County. There is no allegation in the complaint as to the legal settlement of the injured parties, and for the purpose of determining the question involved herein it is immaterial whether their legal settlement was or was not in Dearborn County.

The fact that the facilities for rendering aid to these injured persons in Randolph Township were not adequate or the fact that an emergency existed for their removal out of the township would not relieve the township from the statutory obligation of furnishing the aid as provided. Such aid is mandatory under the Statute. *St. Luke's Hospital* v. *Stevens County* (1935), 181 Wash. 360, 42 Pac. (2d) 1109.

It is further contended that appellant did not communicate or attempt to communicate with appellee Trustee until after said boys were received at their hospital in Ripley County and that no complaint was made to appellee regarding the condition of said boys prior to their removal from the township.

The complaint states that upon the arrival of the injured boys at the hospital, plaintiff endeavored to communicate with the appellee Trustee but was unable to do so. That the condition of said boys required immediate medical attention in order to save their lives and that by the rendering of such immediate medical services the life of one of said boys was saved. We think this is a sufficient allegation of avoidance of making a formal application for aid. *County of Madison* v. *Haskell* (1895), 63 Ill. App. 657.

The progress of civilization is reflected in the laws of the country. Certainly our advanced civilization

would not tolerate nor does the law contemplate that the doors of a hospital be closed to an injured person or the services of a physician be withheld from him until a formal notification be made to the trustee, and the matter of responsibility be determined, and an order given for the aid necessary to save human life. If this were so the relief for humanity for which the law was passed would be frustrated.

Under the circumstances and facts alleged in the complaint the rule our statute implies and indeed the history of poor relief in all jurisdictions sustains the rule that in cases of emergency the physician should, if reasonably possible, attempt to communicate with the proper authorities, but if the authorities be noncommittal, as is alleged in the complaint herein, then the necessary services may be rendered and the law imposes an obligation on the township to pay for such services. *Miller* v. *Banner County* (1934), 127 Neb. 690, 256 N. W. 639; *Burnham* v. *Lincoln County* (1934), 128 Neb. 47, 257 N. W. 491.

Appellees cite the case of *The Bd. of Commissioners of Tipton County* v. *Brown* (1891), 4 Ind. App. 288, 30 N. E. 925, as sustaining their contentions herein. In that case Charles Brown was found in Madison County in a disabled condition and was transported into Tipton County. The court found there was sufficient evidence to establish the fact that he had a permanent settlement in Tipton County and was without necessary means to care for himself. The court held that after he had been transported into Tipton County in good faith, the fact that he had been found injured in Madison County was no reason why he should not be given assistance in Tipton County as a transient pauper. The court further stated that there was

evidence from which the jury could find that he had a permanent settlement in Tipton County and that it devolved upon Tipton County and not Madison County to furnish him relief.

The facts therein are somewhat different from the instant case. In the case under consideration, Ripley County, the place where the services were rendered, was just as much a stranger to the injured parties as was Randolph Township, Ohio County, so far as the allegations of the complaint are concerned, and it is not contended, nor do we think it could be successfully argued, that Dearborn County could be responsible under the allegations set out. The transportation of the injured parties out of Randolph Township was, as disclosed by the complaint, a matter of emergency.

If the injured parties in the instant case had been transported to the place of their legal settlement and the services rendered therein, then the question as to which of said townships would be liable would be presented. It is not alleged in the complaint where the legal settlement of these boys was, or whether they were without a fixed legal settlement or whether the township to which they were transported was or was not their legal settlement. The questions of ultimate responsibility and rights of subrogation are not before us now but the question presented is one of primary responsibility.

In the case of *Newcomer* v. *Jefferson Twp.* (1914), 181 Ind. 1, 103 N. E. 843, the question arose as to whether the township was liable for surgical or medical aid, however necessitous, irrespective of circumstances unless directed by the overseer of the poor. In passing upon that question the court said (181 Ind. 1, 5): "It is not a voluntary service, but an obligation imposed by law. . . . It may also be granted that the obligation does not arise upon the request of some

one other than the overseer, but it is imposed by the statute, when the circumstances are such as disclose the necessity for prompt action by those who are capable of judging of the necessity and impending peril.''

In the case of *Bd. of Commissioners of Howard County* v. *Jennings* (1885), reported in 104 Ind. 108, 3 N. E. 619, the injured party was a resident of Madison County and while working in Howard County was injured. A claim was filed for care and attention against Howard County. The court determined that the services were rendered under the direction of the trustee of Howard County, and that said County was liable. This case lends no assistance in determining the question involved in the instant case.

The complaint herein does state a good cause of action against the appellees and is sufficient to withstand the demurrer.

Judgment reversed with instructions to the trial court to overrule the demurrer to the complaint and to proceed further herein consistent with this opinion.