No. 34,866

N. E. MELENCAMP, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF STANTON, *Appellee.*

(106 P. 2d 1059)

Opinion filed November 9, 1940.

*A. M. Downer,* of Dodge City, for the appellant.
*Max L. Dice,* of Johnson, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action wherein plaintiff sought to hold defendant liable for medical, nursing and hospital services rendered to an alleged pauper. The defendant answered plaintiff's petition, and thereupon plaintiff moved for judgment on the pleadings. The trial court gave judgment for the defendant, and plaintiff appeals.

The allegations of the petition not denied by the answer are that plaintiff is engaged in the practice of medicine at Dodge City, Kan., that on September 6, 1938, one Paul Sluder, resident of Stanton county, was suddenly stricken in the nighttime and was taken by one Pirtle Wilson to a hospital in Dodge City, Kan., at which time he was in a critical condition; that he immediately was admitted to the hospital and plaintiff was called by Wilson to treat him; that Sluder was suffering from a sudden and severe attack of epidemic cerebrospinal meningitis, a deadly, contagious disease, requiring

complete isolation of the patient and constant medical treatment, nursing attention and hospitalization.

It was further alleged that two nurses waited on Sluder and the reasonable charge for their services was stated; that he was confined in the hospital for twenty-nine days and the reasonable charge therefor was stated, the proper charge for laboratory and medicines was also stated and that by assignment plaintiff was the holder of those accounts, and that there was also due to him for medical services rendered a stated amount. He sought recovery from the defendant county of all the enumerated items.

The answer among other things admitted there were no hospital facilities in Stanton county, and that when Sluder was taken to Dodge City he was in need of prompt and immediate medical attention. It was also admitted that Sluder was taken to the hospital at Dodge City, and plaintiff was called by Pirtle Wilson to administer medical treatment to Sluder. By way of defense, it was alleged that on September 6, 1938, and at all times thereafter there was a duly appointed, qualified and acting health officer in Stanton county, and that plaintiff on September 6, or thereafter, did not notify the health officer of a case of epidemic cerebrospinal meningitis arising in Stanton county; that on September 6 there was in Stanton county a duly qualified medical doctor engaged in the active practice of medicine; that plaintiff made no effort to obtain authorization for payment for his services and expense of hospitalization by Stanton county until September 10, 1938, when he called the Stanton county welfare director by telephone from Dodge City and that prior thereto Stanton county had no knowledge of plaintiff's claim, nor did the county have knowledge that Sluder was a patient in the hospital. It was further alleged that Sluder came to Stanton county about August 1, 1938, for the purpose of obtaining employment, and that subsequent thereto and prior to his illness Sluder stayed at the home of his uncle, the above-mentioned Pirtle Wilson, and became ill while at that home, and that prior to becoming ill Sluder was employed by one Collingwood, his wages being $1.50 per day and his meals.

In his brief appellant concedes that Sluder did not have a legal settlement in Stanton county for relief purposes under the social-welfare act in force in September, 1938. He bases his claim primarily upon provisions of our statutes pertaining to control of infectious and contagious diseases, and especially to G. S. 1935, 65-119, reading:

"Any municipal or county board of health or health officer having knowledge of any infectious or contagious disease, or of a death from such disease, within their jurisdiction, shall immediately exercise and maintain a supervision over such case or cases during their continuance, seeing that all such cases are properly cared for and that the provisions of this act as to isolation, restriction of communication, placarding, quarantine and disinfection are duly enforced. . . ."

Although appellant's argument is predicated in part on an assumption Sluder was a poor and indigent person, he ignores the provisions of our statute for relief of the poor in such circumstance (G. S. 1935, 39-323). On the record presented we find the petition alleged Sluder was a pauper and that the allegation was denied by the answer, and we may not assume on plaintiff's motion for judgment that Sluder was a poor and indigent person.

The record discloses no more than that Sluder became ill while at his uncle's house and the uncle, without notifying any health officer or other official authorized to commit Stanton county in any way, took the nephew without the boundaries of Stanton county, across three other counties, and lodged him in a hospital of his own choosing in still another county.

This court has heretofore considered the question of the liability of the county for medical services rendered to poor persons falling ill within the county, and has always recognized the rule to be that before the county was liable, some duly authorized official approved or directed performance of the services for which recovery was sought, the question usually being whether a particular officer had authority to bind the county. Among the cases considered were *Comm'rs of Pottawatomie Co. v. Morrall,* 19 Kan. 141; *Comm'rs of Clay Co. v. Renner,* 27 Kan. 225; *Hawthorne v. Cherokee County,* 79 Kan. 295, 99 Pac. 598; *Dykes v. Stafford County,* 86 Kan. 697, 121 Pac. 1112; *Caton & Starr v. Osborne County,* 110 Kan. 711, 205 Pac. 341; *Leinbach v. Pottawatomie County,* 116 Kan. 347, 226 Pac. 993. In the case at bar it is not contended that any officer of Stanton county authorized Pirtle Wilson to take Paul Sluder to the plaintiff in Dodge City, or that after that was done any officer of Stanton county did any act that committed Stanton county in any manner to pay for Sluder's care.

It is argued, however, that Sluder's illness constituted an emergency, and that he was afflicted with a contagious disease dangerous to the public health. From the allegations of the petition it appears that Pirtle Wilson must have concluded that an emergency existed

and that Sluder was afflicted with a contagious disease. He did not notify the county health officer, but elected to take his nephew to a place of his own choosing. It is true the statute above quoted enjoins certain duties on the county health authorities in connection with infectious and contagious diseases, but we think it cannot be said the county has liability where, as here, no notice of any kind was given the proper public officials, and the services for which recovery is sought were rendered at the request of one not authorized to speak for the county. To arrive at any other conclusion would compel us to say that in event of emergency, or in any event with respect to a person in distress without friends or money, any person so disposed could ignore the proper public officers and take an unfortunate sick or injured person from the place where he might be found, to any doctor or to any hospital of his own choosing, and the local county would be responsible for services rendered. Such a course would disrupt all governmental control and regulation. The contentions of the appellant cannot be sustained.

The judgment of the trial court is affirmed.